OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.

Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.

NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.

The State of Ohio, Appellee, v. Lessin, Appellant.
[Cite as State v. Lessin (1993),     Ohio St.3d    .]
Criminal procedure -- Criminal offense charged arises from
     conduct that encompasses both a constitutionally protected
     act and an act that is not constitutionally protected --
     Trial -- Instructions by court -- Failure of court to
     instruct jury that it may not consider evidence of the
     constitutionally protected act as proof of defendant's
     guilt is reversible error.
When a criminal offense charged arises from conduct that
     encompasses both a constitutionally protected act and an
     act that is not constitutionally protected, failure of the
     trial court to instruct the jury that it may not consider
     evidence of the constitutionally protected act as proof of
     the defendant's guilt is reversible error.
     (No. 92-847 -- Submitted March 17, 1993 -- Decided
October 27, 1993.)
     Appeal from the Court of Appeals for Cuyahoga County, No.
61106.
     On August 10, 1990, a public demonstration was held in
downtown Cleveland to protest President Bush's decision to send
troops to the Persian Gulf.  Defendant-appellant, Cheryl
Lessin, participated in the demonstration to speak on behalf of
the Revolutionary Communist Party.  When Lessin arrived at
Public Square between 4:30 and 4:45 p.m., she met with fifteen
to twenty other people directly associated with the
demonstration.  Using a portable sound system which was made
available to her, Lessin read her prepared statements, which
denounced the current United States military action and
criticized United States foreign policy in the Middle East.  A
small crowd of about a dozen people began to gather.  At some
point during Lessin's speech, a fellow demonstrator produced a
United States flag and told the crowd that it should be burned
because it is a symbol of violence.  Someone from the crowd,
apparently offended by the demonstrator's proposed actions,
tried to pull the flag out of the demonstrator's hands and a
tug of war over it ensued.  While Lessin and the other
demonstrator were trying to regain possession of the flag, they

were also engaging members of the crowd in arguments about flag burning.  Eventually, Lessin recovered the flag and burned it.

While on routine patrol as members of an undercover police unit, Cleveland Police Officers George Deli and Ignatius Sowa received two radio broadcasts concerning the disturbance in front of Terminal Tower.  Upon their arrival shortly before 5:00 p.m., the officers parked their unmarked police car about forty yards from Terminal Tower and approached the situation from different directions on foot.

At trial, officer Deli gave the following account of what he saw at the scene.  Deli stated that upon exiting the police car, he observed a crowd of approximately one hundred to one hundred fifty people in the general vicinity of Terminal Tower.  While some people were just standing, others were milling about, pushing and shoving each other in apparent confusion.  Cheryl Lessin then caught Deli's attention.  He stated that Lessin was leading two other women in rushing through the crowd.  As this group of three were moving back and forth, Deli observed Lessin shoving people, throwing punches and being punched at by members of the crowd.  Deli testified that Lessin was screaming obscenities at the crowd and hollering, "Fuck the United States.  I hate this country.  Long live the Revolutionary Communist Party."  Deli stated that Lessin used these words to "work[] them [the crowd] up into a frenzy" and thereby urge them to commit acts of violence.  After seeing an elderly woman get knocked down by the crowd, Deli approached Lessin and arrested her.  The crowd then began to disperse without incident.1

Deli testified that he did not know that a flag had been burned until after the crowd was brought under control.  On cross-examination, however, Deli admitted that the second radio broadcast informed the officers that a flag had been burned.  Although Deli did not recall mentioning anything about flag burning when he arrested Lessin, he later admitted saying, "she burned the flag" upon arresting her.

Jack Hagan, a Plain Dealer reporter, and Alana Meyers, a member of an environmental activist group participating in the protest, testified for the defense.  Hagan arrived at Public Square around 3:30 p.m. or 4:00 p.m. to cover the demonstration.  Both Hagan and Meyers testified that they observed Lessin speaking to the crowd over the portable sound system, and the struggle over the flag.  Hagan stated that the size of the crowd and its emotional level grew after Lessin burned the flag.  According to both Hagan's and Meyers' testimony, they did not see Lessin punch anyone or run through the crowd flailing her arms in the manner described by the police.  Hagan stated that the only physical contact he witnessed was when one of the protesters was slapped in the face by a woman who opposed her views.

Lessin testified on her own behalf.  Although she agreed that there was "pretty heated debating" going on, she neither encouraged nor witnessed any acts of violence.  The only time she admitted to running around was before the flag was burned when she briefly tried to recover it from a person in the crowd.

On August 16, 1990, Lessin was indicted by a grand jury for inciting to violence, R.C. 2917.01.  Her jury trial commenced on October 22, 1990.  Before any witnesses took the

stand, the jury was shown three videotapes depicting edited portions of what occurred on August 10, 1990, at approximately 4:50 p.m. to 5:00 p.m., on Public Square. Lessin was subsequently convicted as charged and was sentenced to a one-year term of incarceration. The court of appeals, in a two-to-one decision, affirmed Lessin's conviction.

This cause is now before the court pursuant to the allowance of a motion for leave to appeal.

Stephanie Tubbs Jones, Cuyahoga County Prosecuting Attorney, and George J. Lonjak, Assistant Prosecuting Attorney, for appellees.

Christopher D. Stanley; Schreiber, Rossman & Assoc. Co., L.P.A., and Alan C. Rossman; Friedman & Gilbert and Terry H. Gilbert; Kaiser & Kaiser and Mark A. Kaiser, for appellant.

Gold, Rotatori, Schwartz & Gibbons Co., L.P.A., and Lois Robinson; and Kevin Francis O'Neill, urging reversal for amicus curiae, American Civil Liberties Union of Ohio.

Moyer, C.J.     Appellant has raised several propositions of law before this court.[2] All propositions have been properly presented for our review. However, since we have determined that the trial court's failure to properly instruct the jury that flag burning as a mode of expression enjoys the full protection of the First Amendment, our review will be limited to only that error, mandating reversal of appellant's conviction.

Appellant was charged and convicted for violating R.C. 2917.01(A)(1), which reads:

"(A) No person shall knowingly engage in conduct designed to urge or incite another to commit any offense of violence, when either of the following appl[ies]:

"(1) Such conduct takes place under circumstances which create a clear and present danger that any offense of violence will be committed."

The prosecution's theory of the case was not that appellant made statements directing either her fellow demonstrators or members of the audience to commit acts of violence. Officer Deli, in fact, agreed with defense counsel on cross-examination that Lessin neither said "[g]o and assault someone," "[c]ommit violence against these other people in the crowd" or "burn down Terminal Tower." Instead, the state sought to prove that Lessin violated R.C. 2917.01(A)(1) by pushing, shoving and punching people as she rushed through an angry crowd after already having raised its intensity level by denouncing United States foreign policy and by burning the United States flag. According to the state's theory, Lessin violated R.C. 2917.01(A)(1) by provoking the use of force against herself and her fellow demonstrators. Lessin's actions thus suggested that she willingly made herself the target of the hostile crowd's violent reactions in order to dramatize the strength of her convictions and, perhaps, draw sympathetic attention to her cause. Also implied by the state's theory is that Lessin intended to provoke a violent episode in order to secure coverage of the antiwar demonstration by the local television news media. Since her conduct was directed towards inciting violence under potentially explosive conditions where

violence was very likely to occur, the state urged the jury to find Lessin guilty of violating R.C. 2917.01(A)(1).

It is evident from our review of the record that Lessin was partly engaged in expressive conduct protected by the First Amendment during the August 10, 1990 demonstration at Public Square. Her burning of the flag is afforded the same protection against criminal punishment under the First and Fourteenth Amendments as are her words spoken in public criticism of United States foreign policy. A seminal United States Supreme Court opinion, Texas v. Johnson (1989), 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342, determined that flag desecration is "sufficiently imbued with elements of communication" to implicate the constitutional right to free speech.3 Because Johnson's political expression (burning the American flag at a staged political demonstration in Dallas during the 1984 Republican National Convention) was "restricted because of the content of the message he conveyed," Johnson, 491 U.S. at 412, 109 S.Ct. at 2543, 105 L.Ed.2d at 359, the court held that his First Amendment rights were violated.

In rejecting Texas's argument that the state's interest in preventing breaches of the peace justifies prohibition of Johnson's selected manner of protest, the United States Supreme Court stated:

"The State's position, therefore, amounts to a claim that an audience that takes serious offense at particular expression is necessarily likely to disturb the peace and that the expression may be prohibited on this basis. Our precedents do not countenance such a presumption. On the contrary, they recognize that a principal 'function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.' [Citations omitted.] It would be odd indeed to conclude both that 'if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection,' [citation omitted] and that the Government may ban the expression of certain disagreeable ideas on the unsupported presumption that their very disagreeableness will provoke violence.

"Thus, we have not permitted the government to assume that every expression of a provocative idea will incite a riot, but have instead required careful consideration of the actual circumstances surrounding such expression, asking whether the expression 'is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.' Brandenburg v. Ohio, 395 U.S. 444, 447, [23 L.Ed.2d 430, 434, 89 S.Ct. 1827, 1829, 48 O.O.2d 320, 322] (1969) (reviewing circumstances surrounding rally and speeches by Ku Klux Klan)." Johnson, 491 U.S. at 408-409, 109 S.Ct. at 2542, 105 L.Ed.2d at 356-357,

While Lessin's right to verbally criticize her government's foreign policy and her right to burn the United States flag without urging people to commit violent acts can in no way form the basis of a conviction under R.C. 2917.01, Lessin's alleged assaults of passersby are not constitutionally protected from criminal sanction under the First and Fourteenth Amendments. Our duty is to ensure that the jury's guilty

verdict neither transgressed nor contravened Lessin's freedom of expression. In this regard, the United States Supreme Court has cautioned:

"[W]hen a single-count indictment or information charges the commission of a crime by virtue of the defendant's having done both a constitutionally protected act and one which may be unprotected, and a guilty verdict ensues without elucidation, there is an unacceptable danger that the trier of fact will have regarded the two acts as 'intertwined' and have rested the conviction on both together." Street v. New York (1969), 394 U.S. 576, 588, 89 S.Ct. 1354, 1363-1364, 22 L.Ed.2d 572, 582-583.

The risk that a jury will premise its guilty verdict on constitutionally protected conduct is reduced, if not completely eliminated, by an accurate and thorough set of jury instructions which direct the jury to refrain from considering certain evidence as proof of guilt. In this case, the role of the jury instructions was critical in obviating the possibility that each juror would convict based on his or her personal prejudices against flag burners and Communists. Accordingly, the question is whether the jury instructions sufficiently guarded against a guilty verdict being rendered, in whole or part, upon constitutionally protected political expression.

The Ohio Rules of Criminal Procedure provide that the trial judge shall charge the jury in accordance with Crim.R. 30.4 Construing Crim.R. 30(A), we have stated that "[a]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." (Emphasis added.) State v. Comen (1990), 50 Ohio St.3d 206, 553 N.E.2d 640, paragraph two of the syllabus. It is not crucial that the instruction given contain the precise verbiage as proffered by a party:

"In a criminal case, it is not mandatory upon a trial court to give requested instructions to the jury verbatim, but if the requested instructions contain a correct, pertinent statement of the law and are appropriate to the facts they must be included, at least in substance, in the court's charge to the jury. ***" State v. Nelson (1973), 36 Ohio St.2d 79, 65 O.O.2d 222, 303 N.E.2d 865, paragraph one of the syllabus.

Appellant submitted a proposed jury instruction on free speech which was either rejected in part or amended in part by the trial judge. The rejected portion of appellant's proposed instruction, which we find constitutes reversible error, reads as follows:

"The First Amendment protects free speech. The state cannot prosecute someone for exercising her right to free speech. The law applicable to this case is that speaking & burning the flag are protected speech and are protected by the [F]irst [A]mendment & the def[endant] cannot be convicted for such activity." (Emphasis added.)

In determining whether the trial judge erred in failing to give appellant's proposed instruction relating to the First Amendment and protected speech, the court of appeals erroneously employed the abuse of discretion standard of review. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's

attitude is unreasonable, arbitrary or unconscionable. ***"
(Citations omitted.)  State v. Adams (1980), 62 Ohio St.2d
151, 157, 16 O.O.3d 169, 173, 404 N.E.2d 144, 149.  We
previously applied the abuse of discretion standard to review a
trial court's decision not to give a defendant's requested
instruction that his inebriated condition negated the specific
intent element of the crime of murder pursuant to R.C. 2903.02,
and held that it is within the sound discretion of the trial
court to determine whether the evidence presented at trial is
sufficient to require that instruction be given.  State v.
Wolons (1989), 44 Ohio St.3d 64, 541 N.E.2d 443, paragraph two
of the syllabus.  However, unlike Wolons, the determination of
whether the trial court erred in failing to give Lessin's
proposed instruction concerning flag burning does not involve
an inquiry going to the sufficiency of the evidence to support
that specific instruction.  Here, the fact that Lessin burned
the United States flag is uncontroverted.  Therefore, the trial
court had an obligation as a matter of law to give Lessin's
proffered instruction on flag burning because, in the absence
of this instruction, the jury could consider protected speech
as evidence that Lessin was guilty of R.C. 2917.01(A)(1).
Accordingly, we hold that when a criminal offense charged
arises from conduct that encompasses both a constitutionally
protected act and an act that is not constitutionally
protected, failure of the trial court to instruct the jury that
it may not consider evidence of the constitutionally protected
act as proof of the defendant's guilt is reversible error. See
Williams v. North Carolina (1942), 317 U.S. 287, 292, 63 S.Ct.
207, 210, 87 L.Ed. 279, 282:

"To say that a general verdict of guilty should be upheld
though we cannot know that it did not rest on the invalid
constitutional ground on which the case was submitted to the
jury, would be to countenance a procedure which would cause a
serious impairment of constitutional rights."

We cannot uphold Lessin's conviction for the crime of
inciting violence because it is impossible to say with any
degree of certainty that her burning of the United States flag
was disregarded by the jury in reaching its verdict.  The trial
court's instruction given to the jury on free speech5 did not
serve to adequately protect the defendant's rights because it
did not inform the jury that (1) flag burning in the absence of
a call to violence is protected speech under the First
Amendment and (2) the jury is not to consider the fact that
Lessin burned the flag in determining whether she is guilty of
inciting violence.  Without being instructed in accordance with
the law set forth in the above-emphasized portion of
appellant's proffered instruction, there is an unacceptable
possibility that the jury considered a constitutionally
protected act in finding her guilty under R.C. 2917.01(A)(1).
The necessity of giving a more precise instruction is further
underscored because of the following exchange which occurred
between defense counsel and the trial judge during voir dire:

"MR. ROSSMAN:  How many of you are aware of recent Supreme
Court cases that says [sic] it's okay to burn the flag?
"MR. LONJAK:  Objection.
"THE COURT:  The objection is sustained.  There has been
no Supreme Court case, to my knowledge, that permits under any

circumstances that it's okay to burn the flag. That's why the lawyers have been instructed not to discuss the issues of law. And don't do it again, Mr. Rossman.

"MR. ROSSMAN: May I discuss it at sidebar?

"THE COURT: No, you may not." (Emphasis added.)

The trial court's statement is clearly error because it is in direct conflict with the holding in Texas v. Johnson. Having determined that the trial judge failed to guard against the possibility that the jury would consider constitutionally protected speech in convicting appellant for inciting violence, we reverse appellant's conviction. Our decision rests in large part on our awareness of the depth of those personal convictions that consider flag desecration as a repugnant and intolerable act. This is the reason persons unhappy with governmental decisions find burning the United States flag an irresistible method of communicating the degree of their dissatisfaction. Therefore, in circumstances like those now before us, the jury must be instructed in accordance with Texas v. Johnson so that it does not encroach upon the defendant's freedom of expression when returning a guilty verdict. We should not presume that, absent an instruction on flag burning, a jury will disregard such disgraceful and irreverent action in its deliberations on whether the flag burner incited a crowd to violence in violation of R.C. 2917.01(A)(1).

Accordingly, the judgment of the court of appeals affirming appellant's conviction is reversed and the cause is remanded to the trial court for proceedings not inconsistent with this opinion.

Judgment reversed
and cause remanded.

A.W. Sweeney, Wright and Pfeifer, JJ., concur.

Douglas, Resnick and Gwin, JJ., dissent.

W. Scott Gwin, J., of the Fifth Appellate District, sitting for F.E. Sweeney, J.

FOOTNOTES:

1 Officer Sowa gave a similar account of the events at the demonstration, which he described as "borderline chaotic." He stated that no more than five minutes had transpired between the time he and his partners arrived at Terminal Tower and Lessin was arrested.

2 The following propositions of law have been raised by appellant:

1. "Appellant's conviction violates the First Amendment of the United States Constitution."

(a) "O.R.C. 2917.01 is unconstitutionally overbroad, as applied and on its face, because it permitted appellant to be convicted for conduct and speech under the First Amendment to the United States Constitution."

(b) "Appellant's conviction must be reversed, because it was premised in large part upon expression protected by the First Amendment, and any guilty verdict based upon testimony elicited and evidence presented by the state of appellant's unprotected conduct, standing alone, was against the manifest weight of the evidence, not sufficient to sustain a conviction or a verdict under Ohio Crim.R. 29, and violative of appellant's right to due process of law."

(c) "The appellant was denied her constitutional right to a fair trial by the trial court not properly instructing the jury, thereby allowing them to convict appellant for engaging in expression protected under the First Amendment."

2. "The court erred in denying the appellant the opportunity to have a voir dire conducted so that appellant's preemptory [sic] challenges could be intelligently rendered, and challenges for cause effectively asserted in violation of the appellant's Sixth Amendment right of effective assistance of counsel."

3. "The trial court denied the appellant a fair trial by not properly instructing the jury as to an essential element of O.R.C. 2917 [sic]."

4. "Appellant's conviction must be reversed, because the trial court had secret communications with the jury while it was deliberating, which prejudiced the appellant."

5. "The appellant was denied a fair trial by the actions, conduct and prejudice of the trial judge."

6. "Appellant was deprived of her liberty without due process of law by her conviction and sentencing for inciting to violence in violation of O.R.C. Section 2917.01 where appellant's sentence was in violation of her Eighth Amendment right prohibiting excessive, unfair and cruel and unusual punishment."

3 Recognizing that the right to freedom of speech is a more generalized guarantee of freedom of expression, Justice Brennan, writing for the majority in Johnson, stated:

"The First Amendment literally forbids the abridgment only of 'speech,' but we have long recognized that its protection does not end at the spoken or written word.  While we have rejected 'the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea,' United States v. O'Brien [391 U.S. 367 (1968)], supra, at 376 [88 S.Ct. 1673, 1678, 20 L.Ed.2d 672, 679], we have acknowledged that conduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments,' Spence [v. Washington (1974)], supra, at 409 [94 S.Ct. 2727, 2730, 41 L.Ed.2d 842, 846].

"In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'  418 U.S., at 410-411 [94 S.Ct. at 2730, 41 L.Ed.2d at 847]."  Johnson, 491 U.S. at 404, 109 S.Ct. at 2539, 105 L.Ed.2d at 353.

4 The current version of Crim.R. 30 provides:

"(A) Instructions; error; record.  At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests.  Copies shall be furnished to all other parties at the time of making the requests.  The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed.  The

court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.

"On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

"(B) Cautionary instructions. At the commencement and during the course of the trial, the court may give the jury cautionary and other instructions of law relating to trial procedure, credibility and weight of the evidence, and the duty and function of the jury and may acquaint the jury generally with the nature of the case."

5 That instruction reads:

"The [F]irst Amendment to the United States Constitution guarantees to all persons the right to free speech and the government may not prohibit the expression of an idea, simply because society finds the idea itself offensive or disagreable [sic].

"The offense charged in this case applies to situations where speech and or conduct is abused, but only when the speech or expression consciously, under explosive circumstances, spurs others to violence.

"You will hear the term [']clear and present danger['] during the course of further instructions. This means that the state may limit speech and/or conduct which promotes or incites violence provided there is an obvious and immediate danger that such conduct or speech will actually result in violence, not simply public inconvenience, annoyance or unrest.

"To support conviction, the State of Ohio must prove that the defendant in fact, engaged in conduct or speech which urged or incited others to act violently."

Douglas, J., dissenting. This case is not about flag burning. This case is not a Texas v. Johnson (1989), 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 case. This case is not about the right to assemble publicly. This case is not about free speech. This case is about a woman who was charged, tried and convicted of violating R.C. 2917.01(A)(1), which law prohibits any person from inciting another person(s) to commit any offense of violence. The record here, even as set forth in the majority opinion, leads to the inescapable conclusion that appellant's actions (with or without the flag burning) could reasonably be construed by a jury to contravene the proscription of R.C. 2917.01(A)(1).

Appellant was not merely expressing a provocative idea. She was also acting and it is this behavior that offends the statute. There has been much discussion in this case concerning Brandenburg v. Ohio (1969), 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430. I believe the proper emphasis from Brandenburg, in the context of the case at bar, should be on Brandenburg's language that the states may not prohibit the advocacy of the use of force or of law violation "* * * except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such

action." (Footnote omitted and emphasis added.) Id. at 447, 89 S.Ct. at 1829, 23 L.Ed.2d at 434.

That is exactly what happened here -- appellant's actions incited and brought about imminent lawlessness. In this regard, I find State v. Hoffman (1979), 57 Ohio St. 2d 129, 11 O.O.3d 298, 387 N.E.2d 239, both instructive and helpful. The jury in the instant case, the trial judge, and two judges of the court of appeals believed, and I believe, that appellant crossed the line and, thereby, clearly violated R.C. 2917.01(A)(1). Her actions, for which she was convicted, have nothing to do with her burning the flag or with free speech. The verdict of the jury, the judgment of the trial court and that of the court of appeals should be affirmed. Because the majority does not do so, I respectfully dissent.

Resnick and Gwin, JJ., concur in the foregoing dissenting opinion.

Gwin, J., dissenting. I respectfully disagree with the majority's conclusion that the act of burning the national flag is per se protected expression under the First Amendment to the United States Constitution and that the jury could not consider Lessin's act of burning the national flag in determining whether she was guilty of inciting violence in violation of R.C. 2917.01(A)(1).

To read the majority opinion, the citizens of Ohio would conclude that a person who burns the American flag is granted absolute immunity from criminal prosecution. In fact, it would appear the majority is giving the act of burning our national flag more protection than what is afforded free speech under the First Amendment. The United States Supreme Court has stated:

"[W]e reject the view that freedom of speech * * * as protected by the First and Fourteenth Amendments, are 'absolutes,' not only in the undoubted sense that where the constitutional protection exists it must prevail, but also in the sense that the scope of that protection must be gathered solely from a literal reading of the First Amendment. Throughout its history this Court has consistently recognized at least two ways in which constitutionally protected freedom of speech is narrower than an unlimited license to talk. On the one hand, certain forms of speech, or speech in certain contexts, has been considered outside the scope of constitutional protection. See, e.g., Schenck v. United States, 249 U.S. 47 [39 S.Ct. 247, 63 L.Ed. 470]; Chaplinsky v. New Hampshire, 315 U.S. 568 [62 S.Ct. 766, 86 L.Ed. 1031]; Dennis v. United States, 341 U.S. 494 [71 S.Ct. 857, 95 L.Ed. 1137]; Beauharnais v. Illinois, 343 U.S. 250 [72 S.Ct. 725, 96 L.Ed. 919]; Yates v. United States, 354 U.S. 298 [77 S.Ct. 1064, 1 L.Ed.2d 1356]; Roth v. United States, 354 U.S. 476 [77 S.Ct. 1304, 1 L.Ed.2d 1498]. On the other hand, general regulatory statutes, not intended to control the content of speech but incidentally limiting its unfettered exercise, have not been regarded as the type of law the First or Fourteenth Amendment forbade Congress or the States to pass, when they have been found justified by subordinating valid governmental interests, a prerequisite to constitutionality which has necessarily involved a weighing of the governmental interest involved." Konigsberg v. State Bar of California (1961), 366

U.S. 36, 49-51, 81 S.Ct. 997, 1006-1007, 6 L.Ed.2d 105, 116-117.

It has been well established that the First Amendment does not afford protection to a person who screams "fire" in a crowded theater. Nor does the right to free speech allow a person to defame another or utter fighting words which are likely to incite imminent violence. See Brandenburg v. Ohio (1969), 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430. Under the same logic, the government has a valid interest in regulating speech and expression which under certain circumstances are likely to create "a clear and present danger." Schenck v. United States, supra, at 52, 39 S.Ct. at 249, 63 L.Ed. at 473. Accordingly, it is of utmost importance in measuring the protection afforded to free expression to carefully consider the surrounding circumstances of the expression to determine whether it is directed toward inciting or producing imminent lawless action and is likely to incite or produce such action. Brandenburg at 447, 89 S.Ct. at 1829, 23 L.Ed.2d at 434.

Although is is well established that the First Amendment does not afford absolute protection for all speech and expression, the majority of this court is of the opinion that all instances of burning the United States flag are constitutionally protected from criminal sanction. In reaching this decision, the majority relies on Texas v. Johnson (1989), 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342. In that case, Gregory Lee Johnson was convicted under a Texas statute prohibiting a person from intentionally or knowingly desecrating a state or national flag. In affirming the reversal of Johnson's conviction, the United States Supreme Court determined that the Texas statute impermissibly infringed upon a person's right to freedom of speech and expression because such person could be convicted for burning a flag even though this act did not threaten to disturb the peace. In other words, a resident of Texas could have been charged with violating the criminal statute for burning a national flag in the privacy of his own home or under circumstances where it offended no one. This statute clearly infringed upon that person's right to freely express his opinions under the First Amendment.

Nevertheless, the United States Supreme Court did not hold that in every instance a person who burns a flag is afforded absolute protection from criminal prosecution. The First Amendment certainly does not afford protection to a heckler who would appear at a United States war veteran's ceremony screaming epithets against the United States and burning the national flag on stage. This situation would likely create imminent lawlessness in the form of a riot. The heckler's right to free speech and expression would be outweighed by the state's interest in preserving the peace, and, under those circumstances, the state would be permitted to criminally charge the heckler with inciting violence. Under today's ruling, the state of Ohio has no recourse in preventing this imminent lawlessness.

The statute upon which Lessin was charged and convicted reads that "[n]o person shall knowingly engage in conduct designed to urge or incite another to commit any offense of violence * * * when * * * [s]uch conduct takes place under circumstances which create a clear and present danger that any

offense of violence will be committed[.]" R.C. 2917.01(A)(1). This statute is specifically and narrowly designed to protect the state from expression which is directed toward inciting or producing imminent lawlessness action and which is likely to incite or produce such action. This statute complies with the law set forth in Brandenburg, supra. Therefore, in determining whether a person has violated the Ohio statute which proscribes inciting violence, the totality of the circumstances must be considered. These circumstances include, but are not limited to, Lessin's: screaming of obscenities; hollering, "Fuck the United States[,] I hate this country"; running through the crowd; and burning the national flag.

Therefore, it was not reversible error for the trial court to decline instructing the jury that it may not consider evidence of the burning the United States flag as proof of Lessin's guilt of inciting violence. The "totality of circumstances" test would instead require the trial court to instruct the jury that in some instances flag burning is a constitutionally protected act, but under other circumstances it is not.

Douglas and Resnick, JJ., concur in the foregoing dissenting opinion.