DECISION AND JUDGMENT ENTRY
This is an appeal from a Jackson County Common Pleas Court judgment of conviction and sentence. The jury found Jeremy Poe, defendant below and appellant herein, guilty of felonious assault in violation of R.C.2903.11.
Appellant raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED IN NOT CONTINUING THE TRIAL FOR FAILURE OF A PROPERLY SUBPOENAED WITNESS TO APPEAR AND TESTIFY FOR THE DEFENSE."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY ON THE INSTRUCTIONS FOR THE OFFENSE OF AGGRAVATED ASSAULT, R.C. SECTION 2903.12."
Our review of the record reveals the following facts pertinent to the instant appeal. On November 7, 1997, Donald Christopher Britz ("Chris") and his friend, Andy Ball, were visiting at Chris' uncle's house. Later in the evening, Chris' father, Donald Britz ("Don") drove to the uncle's house to pick up the two boys.
After the three entered the truck, an altercation began to brew between the three individuals in the truck and some individuals who were walking along the street. At trial, the witnesses gave conflicting accounts of the events surrounding the altercation.
Chris testified that while he, his father, and Andy were sitting in the truck, a group of people who had been walking along the street gathered in front of the truck. Chris stated that his father beeped the horn so that the individuals would clear the way for his truck to proceed. Chris stated that as his father began to drive, he heard thumps and his father stopped the truck. He explained that his father rolled down the window and asked appellant, "What's the problem?" Chris testified that appellant then pulled out a knife, put it in his father's neck, and stated that he was going to kill Chris' father. Chris stated that he jumped out of the truck and that appellant wandered around the back of the truck. Chris testified that appellant cut him with a knife and that appellant's companion, Clarence Wiseman, became involved in the altercation. Chris denied that anyone present in his father's truck possessed any weapons during the altercation.
Don's version of the events surrounding the altercation were consistent with Chris' version. Don stated that a group of individuals were standing in front of his truck and that he honked the horn. Don stated that the individuals cleared the way for his truck and that he drove approximately eight to ten feet when he heard a pounding on his truck. Don testified that he rolled down his window and asked, "What's the problem?" Don stated that appellant responded, "I'm gonna kill ya, that's the problem." Don explained that at that point, Chris jumped out of the truck and told appellant not to speak to his father like that.
Appellant's witnesses, on the other hand, testified that the three individuals in the truck instigated the altercation. Wiseman explained the events leading up to the altercation as follows:
 "Well, me and [appellant] and uh Becky Baker and Andrea Tilley was goin' to the store. We was walkin' up the road and uh there was three guys in a truck hollerin' somethin'. And, [appellant] asked `em what they said. And they said somethin' else so [appellant] walked up toward the truck to see what they said. And, next thing I know, the two guys on the passenger side jumped out. And I was comin' around * * * [appellant] went around to the passenger side to where the two boys was and I was comin' around toward the back of the truck and when I did the old man * * * the driver come out. And before I could get up there where [appellant] and them two boys was fightin' [appellant], the old man busted me in the mouth with a flashlight."
Appellant testified that when Don pulled the truck out of the driveway, Don's vehicle almost hit the individuals in appellant's group. Appellant stated that he saw Chris step out of the truck with a claw hammer in his hand. Appellant claimed that he simply was protecting Becky, who was seven and one-half months pregnant with his baby. Appellant further stated that he feared Chris would harm him, his girlfriend, or his unborn child and stated that he merely swung the knife, hoping that Chris would retreat.
Appellant also attempted to introduce Becky's testimony. Becky, despite being properly subpoenaed, failed to appear for the trial date. Appellant requested a continuance to compel Becky's appearance. The trial court denied appellant's request for a continuance.
Appellant proffered Becky's testimony, claiming that her testimony would help demonstrate that appellant acted with serious provocation and would thus require the trial court to instruct the jury on aggravated assault. Appellant asserted that Becky would have stated that Chris jumped out of the truck with a hammer in his hand.
At the close of the evidence, appellant requested the trial court to instruct the jury on aggravated assault and on self-defense. The trial court agreed to instruct the jury on self-defense but concluded that insufficient evidence of serious provocation existed to warrant an aggravated assault instruction.
On November 30, 1998, the jury found appellant guilty as charged in the indictment. The trial court sentenced appellant to seven years imprisonment. Appellant filed a timely notice of appeal.
 I
In his first assignment of error, appellant argues that the trial court erred by overruling his motion to continue the trial. Appellant asserts that the trial court should have continued the trial to allow appellant the opportunity to procure Becky's testimony. The state contends that the trial court correctly determined that a continuance was not warranted.
Initially, we note that the decision regarding a motion to continue is left to the sound discretion of the trial court. See, e.g., State v.Lorrain (1993), 66 Ohio St.3d 414, 423, 613 N.E.2d 212, 220; State v.Unger (1981), 67 Ohio St.2d 65, 67, 423 N.E.2d 1078, 1080. In Unger, the court discussed the standard for reviewing a motion to continue as follows:
 "The grant of denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion. * * *."
Id., 67 Ohio St.2d at 67, 423 N.E.2d at 1080 (citations omitted). Consequently, absent an abuse of discretion, a reviewing court will not disturb the trial court's decision. The term "abuse of discretion" connotes more than an error of law or of judgment. Rather, the term implies that the court's attitude is unreasonable, arbitrary, or unconscionable. See, e.g., State ex rel. Lee v. Montgomery (2000),88 Ohio St.3d 233, 235, 724 N.E.2d 1148, 1150; State ex rel. Duncan v.Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 730, 654 N.E.2d 1254,1256; State v. Adamson (1998), 83 Ohio St.3d 248, 250, 699 N.E.2d 478,479. The abuse of discretion standard does not permit the reviewing court to substitute its judgment for that of the trial court's judgment. See,e.g., Chippewa Twp. Trustees, 73 Ohio St.3d at 732, 654 N.E.2d at 1258;In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137-38, 566 N.E.2d 1181,1184.
When considering a motion to continue, a court should evaluate the following factors: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel, and the trial court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstances giving rise to the request for a continuance; and (6) any other relevant factors. See Unger, supra.
In the case at bar, we find no abuse of the trial court's discretion. We disagree with appellant's argument that the trial court's decision to deny appellant's motion to continue violated appellant's Sixth Amendment right to compulsory attendance of witnesses.
In State v. Mayhew, the court discussed a defendant's right to compulsory attendance of witnesses as follows:
 "The right to compulsory attendance of witnesses at trial is undeniable. The United States Supreme Court in Washington v. Texas (1967), 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023, stated the following in holding that the Sixth Amendment right to compulsory attendance of witnesses was applicable to the states as incorporated in the Due Process Clause of the Fourteenth Amendment.
 `The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This is a fundamental element of due process law.'
 Accordingly, the state must aid a defendant in compelling attendance and, further, must do nothing which impedes a defendant's right to compel the attendance of a material witness. * * *."
Id., (1991), 71 Ohio App.3d 622, 626, 594 N.E.2d 1133, 1135 (citations omitted).
In the case sub judice, the state did not impede appellant's right to compel the attendance of a material witness. Rather, the state properly subpoenaed Becky. Becky, however, failed to appear for trial.
Moreover, we note that Becky's testimony, had it been introduced at trial, would merely have been cumulative to appellant's own testimony. Appellant's proffer of Becky's testimony reveals that Becky would have testified that the victim stepped out of the truck with a hammer in his hand. Appellant testified to the same facts.
Thus, we do not believe that Becky's testimony, had the trial court granted appellant a continuance to procure her testimony, would have affected the outcome of the proceedings. The proffer of Becky's testimony indicates that her testimony would have been cumulative to appellant's testimony that Chris exited the truck with a hammer in his hand. Additionally, as we explain further under our discussion of appellant's second assignment of error, we disagree with appellant's argument that Becky's testimony would have aided appellant in establishing that an aggravated assault instruction would have been warranted.
Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II
In his second assignment of error, appellant argues that the trial court erred by failing to instruct the jury on aggravated assault. Appellant asserts that he presented sufficient evidence of serious provocation to warrant an aggravated assault instruction. Appellant argues that Chris' action of jumping out of the truck with a hammer in his hand, approaching the pregnant Becky, and saying "come on" constitutes sufficient evidence of serious provocation. We disagree.
Generally, a trial court has broad discretion in deciding how to fashion jury instructions. The trial court must not, however, fail to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." State v. Comen (1990), 50 Ohio St.3d 206,553 N.E.2d 640, paragraph two of the syllabus. Additionally, a trial court may not omit a requested instruction, if such instruction is "`a correct, pertinent statement of the law and [is] appropriate to the facts * * *.'"State v. Lessin (1993), 67 Ohio St.3d 487, 493, 620 N.E.2d 72, 77
(quoting State v. Nelson (1973), 36 Ohio St.2d 79, 303 N.E.2d 865, paragraph one of the syllabus).
In determining whether to give a requested instruction, a trial court may inquire into the sufficiency of the evidence to support the requested instruction. See id., 67 Ohio St.3d at 494, 620 N.E.2d at 78. A trial court possesses discretion in determining whether sufficient evidence was presented at trial to require a particular jury instruction. State v.Mitts (1998), 81 Ohio St.3d 223, 228, 690 N.E.2d 522, 527. If the evidence does not warrant the instruction or if the instruction is not appropriate to the crime charged, the trial court is not obliged to give the instruction. See Lessin, 67 Ohio St.3d at 494, 620 N.E.2d at 78. Our review, therefore, is limited to resolving whether the trial court abused its discretion in determining that the evidence was insufficient to support the requested charge or in determining that the requested instruction was not pertinent to the crime charged. See Mitts; State v.Wolons (1989), 44 Ohio St.3d 64, 541 N.E.2d 443, paragraph two of the syllabus; see, also, State v. Elijah (July 14, 2000), Montgomery App. No. 18034, unreported. An abuse of discretion may be found if the trial court's attitude was unreasonable, arbitrary or unconscionable. See,e.g., State v. Montgomery (1991), 61 Ohio St.3d 410, 413,575 N.E.2d 167, 171.
"`[I]n a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given.'" State v. Mack (1998), 82 Ohio St.3d 198, 200,694 N.E.2d 1328, 1330 (quoting State v. Deem (1988), 40 Ohio St.3d 205,533 N.E.2d 294, paragraph four of the syllabus).
"[P]rovocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.'"
Id., 82 Ohio St.3d at 200, 694 N.E.2d at 300-01 (quoting Deem, paragraph five of the syllabus.
In determining whether the provocation was "reasonably sufficient," a court must apply an objective standard to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. Id., 82 Ohio St.3d at 201, 694 N.E.2d at 301 (citing State v.Shane (1992), 63 Ohio St.3d 630, 590 N.E.2d 272).
"[T]he provocation must be `sufficient to arouse the passions of an ordinary person beyond the power of his or her control.' If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case `actually was under the influence of sudden passion or in a sudden fit of rage.'"
Id. (quoting Shane, 63 Ohio St.3d at 634-45, 590 N.E.2d at 276).
Generally, neither words alone nor fear itself will constitute evidence of serious provocation. See id. ("[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations"; and "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage.").
In the case at bar, we agree with the trial court's conclusion that appellant failed to present sufficient evidence of serious provocation to warrant an aggravated assault jury instruction. Neither appellant's evidence that he was afraid because he observed the victim with a hammer in his hand nor his evidence that the victim stated "come on" sufficiently demonstrates serious provocation. See id.
We additionally note that Becky's testimony, had the trial court continued the matter, would not have aided appellant in establishing serious provocation sufficient to warrant a jury instruction. Becky's proffered testimony that she observed the victim exit the truck with a hammer in his hand does not sufficiently demonstrate serious provocation and simply is cumulative to appellant's own testimony. See id.
Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J.: Dissents, Kline, P.J.: Concurs in Judgment Opinion.
 ___________________________ Peter B. Abele, Judge