DECISION AND JUDGMENT ENTRY
William S. Cole appeals the decision of the Jackson County Common Pleas Court, Domestic Relations Division, finding him in contempt of court. He assigns the following error:
 1. THE TRIAL COURT ERRED IN FINDING APPEALANT [sic] IN CONTEMPT OF COURT ON EACH OF THE CONTESTED GROUNDS
 A. APPELLANT WAS NOT TIMELY AND PROPERLY SERVED WITH APPELLEE'S MOTION IN CONTEMPT
 B. THE TRIAL COURT ERRED IN HOLDING APPELLANT IN CONTEMPT FOR VERBAL ABUSE TOWARD APPELLEE ON OCTOBER 14, 1999
 C. THE TRIAL COURT ERRED IN HOLDLING [sic] APPELLANT TO A "HIGHER STANDARD" THAN APPELLEE DUE TO HIS BEING AN ATTORNEY
 D. THE TRIAL COURT ERRED IN HOLDING APPELLANT IN CONTEMPT FOR FAILING TO PAY FULL SPOUSAL SUPPORT WHILE FINDING THE SET-OFFS TAKEN TO HAVE BEEN APPROPRIATE
 E. THE TRIAL COURT ERRED IN FINDING MR. COLE TO HAVE AN ARREARAGE IN HIS CHILD SUPPORT OBLIGATION, AS THE OBLIGATION WAS NOT FINAL UNTIL THE FILING OF THE DECREE
 F. THE TRIAL COURT ERRED IN FILING [sic] MR. COLE TO BE IN CONTEMPT OF ITS ORDER TO PAY THE MILTON BANK DEBT
Finding merit in some of the branches of appellant's assigned error, we affirm the trial court's judgment in part and reverse in part.
After their marital relationship soured, appellee sought a divorce from appellant. A series of temporary orders followed. On October 28, 1999, the trial court issued a decision which awarded appellee spousal support and child support, and distributed the debts and assets of the parties' marriage. The decision also instructed appellee's counsel to prepare and submit a final divorce decree. On December 8, 1999, appellant filed a motion asking the court to hold appellee in contempt for, among other things, violating the visitation order, failing to notify him of events involving their children, and failing to return property as ordered under the temporary orders. On December 15, 1999, appellee filed a contempt motion against appellant alleging, among other things, that appellant did not provide child and spousal support as required and had not paid debts he was ordered to pay. Not until February 2, 2000, did the court enter a final divorce decree that incorporated its findings from the October decision. The contempt hearing proceeded on February 7, 2000, and the court found both parties in contempt for various reasons. The court sentenced both parties to three days in jail but suspended the sentences and ordered each party to pay the other's attorney's fees. After appellant was ordered to pay $150 more in attorney's fees than appellee, he appealed.
Contempt is a disregard of, or disobedience to, an order or command of judicial authority. State v. Flinn (1982), 7 Ohio App.3d 294 . We will not reverse a finding of contempt by a trial court unless that court abused its discretion. State ex rel. Ventrone v. Birkel (1981),65 Ohio St.2d 10. An abuse of discretion consists of more than an error of judgment; it connotes an attitude on the part of the trial court that is unreasonable, unconscionable, or arbitrary. State v. Lessin (1993),67 Ohio St.3d 487; Rock v. Cabral (1993), 67 Ohio St.3d 108. When applying the abuse of discretion standard of review, we are not free to merely substitute our judgment for that of the trial court. In re JaneDoe 1 (1991), 57 Ohio St.3d 135, citing Berk v. Matthews (1990),53 Ohio St.3d 161. The trial court is in the best position to judge credibility of testimony because it is in the best position to observe the witnesses' gestures and voice inflections. Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77.
Contempt may be classified as direct or indirect. Direct contempt occurs in the presence of the court in its judicial function. Indirect contempt constitutes those acts occurring outside the presence of the court that show a lack of respect for the court or its lawful orders. SeeThe First Bank of Marietta v. Mascrete, Inc. (1998), 125 Ohio App.3d 257. Contempt may be further classified as civil or criminal. This classification depends upon the character and purpose of the punishment imposed. In civil contempt, the punishment is remedial or coercive in nature and is imposed for the benefit of the complainant. Pugh v. Pugh
(1984), 15 Ohio St.3d 136; Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250. Criminal contempt is punitive and is usually characterized by an unconditional prison term or fine. Where the sole purpose of contempt is punitive and not coercive, courts consider the contempt criminal in nature. Normally, contempt proceedings in domestic cases are civil in nature as they are designed to coerce or encourage future compliance with the court's orders. Id. Thus, we consider the proceedings here to be civil contempt.
In the first prong of his assigned error, appellant argues that he was not timely and properly served with the motion for contempt. He maintains that such a motion must be served on the person alleged to be in contempt rather than his attorney.[1] He also complains that he did not receive personal notice of the hearing until Friday, February 4, 2000 and the hearing was held on Monday, February 7, 2000 at 9:00 a.m. Therefore, he was not able to prepare properly or consult with counsel.
In Rose v. Rose (Mar. 31, 1997), Franklin App. Nos. 96APF09-1150 and 96APF11-1550, unreported, the Tenth District Court of Appeals held that direct service of a contempt motion on the alleged contemnor is not necessary when that individual had actual notice of the contempt hearing. Here, appellant does not dispute that he had actual knowledge that appellee had filed a motion for contempt against him and that a hearing was scheduled. In fact, the parties even deposed one another for purposes of their motions prior to the hearing.
Furthermore, appellant was personally served with the motion. Rather than arguing that proper service was not effected, appellant argues that he was not served in such a timely manner that he could prepare. Whether there has been an adequate period of time between the issuance of the show cause order and the commencement of the hearing on the contempt charges is committed to the discretion of the trial court. Pease Co. v.Local Union 1787 (1978), 59 Ohio App.2d 238, 240. Therefore, the court's decision to proceed should only be reversed if we find that the trial court abused that discretion. Id.
Appellant does not dispute that he was aware of the hearing prior to personal service being made. Appellant's counsel at that time was his law partner who worked in the same office with him. Furthermore, both parties conducted discovery prior to the hearing regarding their contempt motions. Based on these factors, appellant's argument that he could not prepare or consult with counsel is not persuasive. Therefore, the trial court's decision to proceed with the hearing was not an abuse of discretion.
In the second prong of appellant's assigned error, he argues that the court erroneously found him in contempt for verbal abuse towards appellee on October 14, 1999 at Parents Night. To support a contempt finding, the trial court must find "clear and convincing evidence" that the alleged act occurred. See Pugh v. Pugh (1984), 15 Ohio St.3d 136, and In reAdoption of Holcomb (1985), 18 Ohio St.3d 361. "Clear and convincing evidence" is evidence which will provide in the mind of the trier of fact, a firm belief or conviction as to the facts sought to be established. See Cincinnati Bar Assn. v. Massengale (1991),58 Ohio St.3d 121, 122, and In re Meyer (1994), 98 Ohio App.3d 189, 195. It is considered a higher degree of proof than a mere "preponderance of the evidence," the standard generally utilized in civil cases, but it is less stringent than the "beyond a reasonable doubt" standard used in criminal trials. The standard of review for weight of the evidence issues, even where the burden of proof is "clear and convincing" retains its focus upon the existence of "some competent, credible evidence." SeeState v. Schiebel (1990), 55 Ohio St.3d 71, 74.
Appellant admitted that he was angry on Parents Night because appellee had not informed him about the event. He also admitted that the parties exchanged statements that evening and that he made a comment regarding taking appellee to court in front of their daughter and others. Appellant denied cursing and stated that he got very close to appellee so he does not believe he was yelling.
Appellee testified that on Parents Night appellant told her he would "haul her ass into court and it wouldn't cost [him] a penny." She further testified that appellant got into her face, backed her against the wall, pointed at her, and yelled at her using profanity. The parties were standing near the other players and their parents. Because of appellant's actions, their daughter ran off and refused to participate in the event.
Appellant contends there is no clear and convincing evidence that he verbally abused appellee. We disagree. The court was free to credit appellee's testimony regarding the events. Seasons Coal Co., supra. Further, appellant admitted he was angry and that he got close to appellee. Therefore, the court's finding of contempt in this regard is not an abuse of discretion, nor is it against the weight of the evidence.
Next, appellant argues that the court erred in holding him to a higher standard than appellee because he is an attorney. In making his oral pronouncement regarding the sanctions, the trial court stated that he imposed a higher amount of attorney's fees on appellant because, among other things, he expects appellant not to be in contempt because he is an attorney, e.g. an officer of the court.
We do not believe the court abused its discretion by holding appellant to a higher standard due to his profession. The court is free to consider a party's mental state and reasons for acting as he did when imposing sanctions. Apparently, the court found that appellant was more culpable because he was educated in the law and, therefore, able to more fully understand the importance of following the court's orders. We find nothing irrational about that reasoning.
In the fourth section of his assigned error, appellant argues that the court erred in holding him in contempt for failing to pay full spousal support while finding that the set-offs he took were appropriate. Again, we disagree.
Appellant, without the court's permission, deducted from his support obligation amounts owed by appellee for various bills she incurred in appellant's name after the parties separated. The court found appellant in contempt for failing to pay his court ordered spousal support obligations in October 1999 and November 1999, as required by the temporary orders. However, the court did not find appellant in contempt for failing to pay his December 1999 spousal support obligation under the October 28, 1999 decision. Therefore, we need not determine the effect of the October 28, 1999 decision in this regard.
The court found that appellant was entitled to reimbursement for these bills but that he should not have engaged in "self-help." The court was essentially sanctioning appellant for failing to follow the requisite procedure of asking the court to either order appellee to make such payments or expressly authorizing appellant to make the deductions from his temporary spousal support payments. Because appellant effectively took the law into his own hands, the court did not abuse its discretion in finding him in contempt for these actions.
In the remainder of his assigned error, appellant alleges that the court erred in finding him in contempt for having an arrearage in his child and spousal support obligations and failing to pay the Milton Bank debt. Appellant argues that while the court issued its decision in October 1999, final judgment was not entered until February 2, 2000, five days before the hearing. He submits that the temporary orders remained in effect until the decree was journalized. We agree.
The October decision states that appellant shall pay $1946.64 per month in child support. It sets no date for the commencement of this obligation. The decision further awards appellee spousal support in the amount of $2000 per month beginning December 1, 1999 and lasting for four years. The court also ordered that appellant pay all indebtedness of the parties including the indebtedness of the business known as Broadway Shoes.
A final decree determines the entire case and reserves nothing for future determination. R.C. 2505.02. Temporary orders merge into the final divorce decree; however, temporary orders normally remain in effect until journalization of the final judgment. Colom v. Colom (1979),58 Ohio St.2d 245. Until a final decree is journalized, the trial court retains the right to change its mind. See Miller v. Trapp (1984),20 Ohio App.3d 191, 193. This is true even if the court has issued a memorandum decision. Id. Moreover, Civ.R. 58(A) provides that, "[a] judgment is effective only when entered by the clerk upon the journal."
The court had not journalized a final decree at the time appellee filed her motion seeking to hold appellant in contempt for failing to comply with the court's October 1999 decision. In its October 1999 decision, the court ordered appellee's counsel to prepare the final divorce decree incorporating the terms of the court's decision, as well as the court's oral pronouncements and any matters agreed upon by the parties. It is unclear from the record why there was a three month delay between the issuance of the court's decision and the journalization of the final divorce decree. However, a court cannot punish a party for failure to comply with a decision that is not yet legally binding. A decision of a court must be journalized to be effective. San Filipo v. San Filipo
(1991), 81 Ohio App.3d 111, 112.
Admittedly, the entry was journalized prior to the contempt hearing. At that point, the decision became enforceable. Appellant is clearly liable for the increased support obligations, and they may in fact be retroactive in part. However, on December 15, 1999, the day appellee filed her motion for contempt, there was no judgment to enforce.
Accordingly, we conclude that the trial court abused its discretion in finding appellant in contempt on the support matters because there was no judgment to enforce at the time the appellee filed her motion. If in fact appellant did not comply with the February 2, 2000 judgment within a reasonable period of time after its entry, the trial court is free to determine whether that conduct amounts to contempt upon proper notice and an opportunity for a hearing.
To the extent that the finding of contempt also relates to the Milton Bank obligation, that judgment is also reversed on the same rationale as the support matters.
In sum, we overrule appellant's assigned error in part and sustain it in part. The trial court's judgment of contempt relating to child and spousal support obligations and the Milton Bank debt is reversed. In all other regards, it is affirmed.
JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART and that Appellant recover of Appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court, Domestic Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 _______________________ William H. Harsha, Judge
Kline, J.: Concurs in Judgment Opinion as to branches A-D of A/E I; Concurs in Judgment Only as to branches E and F of A/E I.
Evans, J.: Concurs in Judgment Opinion.
[1] Though appellant is now representing himself, he was represented by counsel below.