[Cite as *State v. Hayes*, 2019-Ohio-257.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :          Case No.   17CA1056

vs.                                     :

JOSHUA HAYES,                           :          DECISION AND JUDGMENT ENTRY

    Defendant-Appellant. :

_____

APPEARANCES:

Carly M. Edelstein, Columbus, Ohio, for appellant.[1]

Dave Yost, Ohio Attorney General, and Joel King, Assistant Attorney General, Columbus, Ohio, for Appellee.

CRIMINAL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED:1-17-19
ABELE, P.J.

{¶ 1} This is an appeal from an Adams County Common Pleas Court judgment of conviction and sentence. A jury found Joshua Hayes, defendant below and appellant herein, guilty of (1) forty counts of improper use of the Ohio Law Enforcement Gateway (OHLEG), in violation of R.C. 2913.04(D), and (2) five counts of improper use of the Law Enforcement Automated Database System (LEADS), in violation of R.C. 2913.04(C).

{¶ 2} Appellant raises the following assignments of error for review:

---

[1] Different counsel represented appellant during the trial court proceedings.

FIRST ASSIGNMENT OF ERROR:

"TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO RAISE AN AFFIRMATIVE DEFENSE PROVIDED FOR IN R.C. 2913.04."

SECOND ASSIGNMENT OF ERROR:

"JOSHUA HAYES' INDICTMENT AND CONVICTION UNDER R.C. 2913.04(C) AND 2913.04(D) VIOLATED HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT DENIED MR. HAYES THE EFFECTIVE ASSISTANCE OF COUNSEL FOR COUNTS 40-42."

{¶ 3} The present case arises out of appellant's alleged misuse of OHLEG and LEADS while employed as a Village of Manchester police officer. After an audit raised suspicions, Ohio Bureau of Criminal Investigation Special Agent David Hornyak investigated whether appellant had made any improper searches. Agent Hornyak subsequently determined that appellant had conducted multiple OHLEG and LEADS searches of himself and several individuals, including Brian Edwards, Carla Knipp, Codey Carter, James White, Kristopher Blanton, Sarah Lowman, David Rowe and Deanna Dryden.

{¶ 4} An Adams County Grand Jury returned an indictment that charged appellant with ninety-two counts of unauthorized use of OHLELG and seventeen counts of unauthorized use of LEADS, all fifth-degree felonies, in violation of R.C. 2913.04. Appellant entered not guilty pleas. Before trial, the state dismissed forty-four counts and the court renumbered the remaining

counts, which left forty-eight counts of unauthorized use of OHLELG and seventeen counts of unauthorized use of LEADS.

{¶ 5} At trial, OHLEG quality assurance specialist Michelle Roach-Haver testified that an authorized user may access OHLEG for the administration of criminal justice only and that "[c]uriosity is not an authorized use of OHLEG information." Roach-Haver explained that the OHLEG rules and regulations define "the administration of criminal justice" as follows:

> The detection, apprehension, detention, pre-trial release, post-trial release, prosecution, adjudication, correctional supervision, rehabilitation of accused persons or criminal offenders. This also includes criminal identification activities, the collections, storage, and dissemination of criminal history record information and criminal justice employment. In addition, administration of criminal justice includes crime prevention programs to the extent access to criminal history record information is admitted to law enforcement agencies for law enforcement programs as in record checks for individuals who participate in a neighborhood watch or safe house programs.

The state presented Roach-Haver with a copy of appellant's request for OHLEG access. The form states, just below appellant's signature, that "[t]he undersigned agrees that all information from this site is for law enforcement purposes ONLY. Any dissemination to the public is strictly prohibited."

{¶ 6} Roach-Haver additionally related that every time a user logs in to OHLEG, the user must agree to access OHLEG "for the official purposes of my agency and the administration of criminal justice." A user must also agree with the following two statements: (1) "I acknowledge and agree that I will utilize this information exclusively for the administration of criminal justice for the official purpose of my agency"; and (2) "I acknowledge that any unauthorized access or misuse of the law enforcement information and data on this site is prohibited by Revised Code

Section 2913.04 and constitutes a fifth degree felony." Roach-Haver stated that the system will not allow a user to continue unless the user agrees to the foregoing statements.

{¶ 7} During Roach-Haver's testimony, the state also introduced the OHLEG training video. The training video states that "OHLEG sources are privileged and to be used in the administration of criminal justice only. Definition of such duties includes detection, apprehension, detention, pre-trial release, post-trial release, prosecution, adjudication, correctional supervision, rehabilitation of accused persons, and identification activities as outlined in the OHLEG rules and regulations."

{¶ 8} Roach-Haver testified that using OHLEG to inquire whether a friend has an outstanding warrant is not a proper use of OHLEG. When questioned whether appellant may have properly used OHLEG to determine whether his friend, Brian Edwards, had any active warrants, Roach-Haver responded that OHLEG does not show any warrants–active or otherwise. She later indicated that, although OHLEG would not display warrants, it would produce an alert that "there is something active in LEADS."

{¶ 9} Roach-Haver explained that "[u]sing the system for personal use or personal gain in any manner would be considered misuse." The OHLEG rules and regulations explicitly provide: "Access to OHLEG is limited to use for official law enforcement/administration of criminal justice purposes only, not for personal use or gain." Roach-Haver further stated that a user is allowed to conduct a self-search during a seven-day practice period and that after the seven-day period, self-searches are not authorized. The OHLEG manual specifically states that a new user is permitted "to run a self-search for a period of seven days from the date they receive their access as a means of learning how to use the search engine tool." The rule also provides that

"[a]ny self-searches run by a user beyond the seven day initial training period will be subject to audit review and investigation as misuse."

{¶ 10} Roach-Haver explained that on July 30, 2015, at approximately 12:20 a.m., appellant accessed OHLEG and searched Brian Edwards's social security number, then viewed seven different records associated with Edwards. She stated that on October 5, 2015, at approximately 4:08 a.m., appellant searched a Carla Knipp who lives in Lawrence County. Roach-Haver additionally detailed the other times appellant accessed OHLEG to search for himself, James White, Joe Himes, Kristopher Blanton, Sarah Lowman, and David Rowe.

{¶ 11} Jeremy Hansford testified that he is the Ohio State Highway Patrol data system administrator who oversees the Ohio Criminal Justice Information Services, including LEADS. Hansford explained that officers may access LEADS to obtain "driving information, criminal history information, wants, warrants, stolen vehicles, missing people, * * * known suspected terrorists, [and] fugitive felons." He stated that LEADS contains national files, while OHLEG contains only Ohio files.

{¶ 12} Hansford related that an officer must be certified to use LEADS. He testified that in October 2014, appellant passed the certification test. Hansford stated that the certification test requires the user to know "what its permitted use is." Hansford indicated that the LEADS manual states that "LEADS can be used for the administration of criminal justice by authorized criminal justice agencies" and defines "the administration of criminal justice" as "the performance of any of the following activities: detection, apprehension, detention, pre-trial release, post-trial release, prosecution, adjudication, correctional supervision, rehabilitation of accused person or criminal offenders."

{¶ 13} The LEADS manual states that a user may "run inquiries as long as those * * * inquiries are a legitimate part of the administration of criminal justice." The manual indicates that "[a]n officer on the street can request a record check on a driver stopped for a traffic violation," but "cannot * * * check a neighbor's driving record."

{¶ 14} Hansford testified that when a user logs in to the LEADS mobile application, a red warning banner advises the user that "[u]nauthorized use of the system is prohibited and may be subject to criminal and civil penalties." After log in, another screen appears that the user must review and accept before continuing. It states: "I will conduct LEADS queries only for official business or as part of my job assignment. I will not share LEADS query results outside of my organization, including to the public." Additionally, appellant signed a "LEADS Security Agreement" that recites appellant's understanding that he "may use OHLEG/LEADS access for [his] employment with the Manchester Police Department for Law Enforcement Investigative purposes only."

{¶ 15} Carla Knipp testified that she and appellant dated until December 2015, and that appellant is the father of her children. Knipp stated that on October 5, 2015 at 4:08 a.m., she was not involved in any type of criminal investigation with appellant and that she had never been a suspect in a crime. Knipp related that after appellant's searches came to light, appellant informed Knipp that he had searched her name because "he was calibrating the system."

{¶ 16} David Rowe testified that he dated Knipp, and that on the date appellant searched him (April 4, 2016, at 10:01 a.m.), he had not been involved in any type of criminal investigation with appellant. He further stated that he lived an hour and one-half away from Manchester and had never been to Manchester until the date of his testimony.

{¶ 17} On the third day of trial, the prosecutor advised the court that he had learned of a potential ethics violation involving evidence that defense counsel wished to introduce. The prosecutor stated that the evidence may be confidential under the Ohio Supreme Court Rules for the Governance of the Bar. The prosecutor indicated that the evidence concerned Kris Blanton, an assistant Adams County Prosecuting Attorney and former Village of Manchester Traffic Court Magistrate. The prosecutor explained that when Blanton was a magistrate, he dismissed a speeding ticket that appellant had issued to the Adams County Sheriff's granddaughter, and appellant believed Blanton acted improperly by dismissing the ticket. The prosecutor stated that, although defense counsel could present evidence regarding the foregoing factual circumstances, counsel could not delve into "the formal process that happened after those factual allegations."

{¶ 18} Defense counsel, however, asked the court to continue the trial and explained:

> I believe that I'm put in an ethical situation at this point that I've already violated ethics and that if I continue I'm either stuck between representing my client or violating ethics. I don't feel there is any way that an attorney can proceed without a conflict of interest at this point with what has been said and accused.

The prosecutor asserted that continuing the trial would not serve any purpose and that the court's options were to declare a mistrial or proceed with the jury trial.

{¶ 19} The trial court observed that the parties had previously discussed the matter in chambers and that the parties indicated that defense counsel may inquire into the circumstances when cross-examining the Village of Manchester Chief of Police, Jeffrey Bowling. Appellant's counsel stated, "That's correct, Your Honor." The prosecutor stated, "as long as [the Chief of

Police] doesn't go into whether or not there was or wasn't a grievance everything is okay." The court thus determined that neither a continuance nor a mistrial was warranted.

**{¶ 20}** The state's next witness, Brian Edwards, testified that he is one of appellant's friends, as well as a Manchester volunteer firefighter. Edwards stated that he had no law enforcement interaction with appellant and, that on the dates appellant searched his name in OHLEG and LEADS, appellant had not stopped Edwards to investigate any alleged criminal conduct. Edwards additionally related that he did not ask appellant to check his vehicle registration or license plates. Edwards explained that he did, however, ask appellant to investigate whether Edwards had an outstanding warrant in the State of Kentucky, and, on another occasion, asked appellant if Edwards had a warrant for failing to pay a judgment. Edwards indicated that both times, appellant informed him that Edwards did not have any warrants.

**{¶ 21}** James White testified that he volunteers at the fire station and that one time, appellant asked White if White "want[ed] to play a game." White responded affirmatively, and appellant told White to give appellant White's social security number so that appellant could check if White had any warrants. Appellant informed White that if the search revealed a warrant, appellant would be "taking [White] in."

**{¶ 22}** Deanna Dryden testified that she works at a local bar and, although appellant investigated a fight or two that she had reported at the bar, she had never been involved in a traffic stop or other criminal investigation on the dates and times that appellant searched her information in LEADS.

{¶ 23} Jeremy Upole stated that appellant responded to a report Upole made in July 2015, but Upole had not been involved in any criminal investigation with appellant on the dates appellant searched his information in LEADS.

{¶ 24} Joe Himes, an emergency medical technician and volunteer firefighter, testified that in April 2015 appellant informed Himes that his vehicle registration sticker had expired. Himes stated that he did not, however, have any criminal interaction with appellant during the other times appellant searched Himes's information.

{¶ 25} Sarah Lowman testified that she encountered appellant on May 29, 2016 while she walked home from a bar. Appellant stopped Lowman and her friend and asked for identification. Lowman gave appellant her identification and social security number. A few days later, Lowman and appellant developed a romantic relationship and remained in a relationship until December 2016. Lowman indicated, however, that she had not been involved in any law enforcement investigations when appellant searched her information on June 5, 2016.

{¶ 26} Former Manchester Police Officer Jason Mallott testified that he and appellant formerly lived together in a house owned by Cody Carter. Officer Mallott explained that when employed with the Village of Manchester, he often ran vehicle tags if he had reasonable suspicion to do so. Officer Mallott additionally stated that OHLEG will show a "warrant block," which is a block on a driver's license. Officer Mallott indicated that if he wanted to know if someone had a warrant, however, he would use LEADS.

{¶ 27} Jeffrey Bowling, the former Village of Manchester Chief of Police, testified that appellant twice signed a form indicating that appellant understood OHLEG and LEADS access

were "for law enforcement purposes only." Chief Bowling additionally explained that he never instructed appellant to search anyone and specifically did not instruct appellant to search Blanton.

{¶ 28} On cross-examination, defense counsel asked Chief Bowling whether a criminal investigation of Blanton existed, and the chief responded negatively. Defense counsel asked if the chief was "positive of that," and the chief stated, "Uh-uh." Chief Bowling further explained that Blanton quit his position as magistrate because appellant "filed a complaint on him."

{¶ 29} Cody Carter testified that appellant was a former tenant and that he does not recall being the subject of a law enforcement investigation.

{¶ 30} Before the state presented its next witness, Blanton, defense counsel moved for a mistrial or continuance and requested to withdraw from representing appellant due to a "potential conflict." In particular, defense counsel asserted that he could not present a complete defense due to a potential ethics violation because appellant would testify that he searched Blanton's name to obtain his address to complete a disciplinary complaint regarding Blanton's dismissal of the speeding ticket. The prosecutor, however, argued that prohibiting defense counsel from inquiring into any formal disciplinary complaint that appellant might have filed bore no relevancy to the case. The prosecutor thus asserted that if appellant "is alleging that he ran [Blanton's name] for a legal investigation then who cares what happened [next]." The prosecutor claimed that appellant could present the factual circumstances of Blanton's conduct and could assert that appellant believed Blanton acted improperly, but could not argue or present evidence that appellant might have filed a formal complaint with the disciplinary counsel.

{¶ 31} At this juncture, the trial court asked defense counsel to explain the relevancy of any formal complaint appellant may have filed. Defense counsel asserted that "it would add

credence to [appellant's] action, add credence to why he did the things he did." Counsel claimed that introducing evidence that appellant filed a formal complaint would allow counsel to show that appellant's use of OHLEG was proper, i.e., that appellant searched Blanton on OHLEG in order to obtain information necessary to complete the complaint.

{¶ 32} The prosecutor again reiterated that nothing prevented appellant from attesting to appellant's belief that Blanton acted improperly. The prosecutor explained:

> So nothing is handcuffing the defendant to present as much as he wants what [sic] his delusional belief that this was a law enforcement purpose and that instead of talking to the, I don't know, 20 some thousand sworn officers in the State of Ohio, they are just going to send it to a few attorneys of the disciplinary counsel.

{¶ 33} The trial court overruled appellant's motions. Blanton then testified that, when employed as the traffic court magistrate, he dismissed a ticket appellant had issued to the Adams County Sheriff's granddaughter. Blanton stated that a member of the granddaughter's family had approached him about the speeding ticket and that Blanton later dismissed the ticket. Blanton further explained that dismissing a speeding ticket for a first-time offender who is a young driver is not uncommon.

{¶ 34} Special Agent David Hornyak testified that he investigated the OHLEG and LEADS complaints against appellant to determine whether appellant possessed a proper purpose to conduct the searches. Agent Hornyak explained that to determine whether appellant possessed a proper law enforcement purpose to conduct the searches, Agent Hornyak reviewed appellant's time sheets, official records and call logs and compared them to the OHLEG and LEADS searches. Agent Hornyak stated that his investigation indicated that appellant had conducted multiple searches that did not have a proper law enforcement purpose.

{¶ 35} In his defense, appellant presented testimony from Annissa Grooms, the Village of Manchester court clerk. Grooms stated that when Blanton served as the traffic court magistrate, he dismissed a speeding ticket that appellant had issued. Grooms explained that appellant later spoke to Grooms about the dismissal and asked her to complete a witness statement about the dismissed the ticket. Grooms indicated that Blanton later resigned as a result of the speeding ticket investigation.

{¶ 36} Appellant also testified in his defense. He explained that he believed all of his OHLEG and LEADS searches were for legitimate law enforcement purposes and offered the following as reasons for his searches:

1. Edwards asked appellant whether Edwards had a warrant.

2. Appellant checked the status of Knipp's license and registration due to financial difficulties he and Knipp were experiencing.

3. Appellant searched Carter's information as "a status check on operating a vehicle" to see if Carter's license and registration were valid.

4. Appellant searched White as a status check and because White asked appellant to do so.

5. Appellant checked Himes's license and registration to investigate whether Himes was on-duty at the time appellant viewed Himes's vehicle in the fire station parking lot. Appellant explained that he ran tags of cars parked at the fire station to help protect property–to ensure "it was the right person that was supposed to be on duty that day." Appellant stated that he searched Himes another time after Himes's supervisor requested a status check.

6. Appellant performed self-searches while "calibrating the system," i.e., testing whether the wireless connection was working.

7. Appellant searched Blanton "as part of an investigation that [appellant] conducted in reference to possible criminal charges." Appellant explained that he believed Blanton "[i]mproperly dismissed a ticket."

8. Appellant stated that he searched Lowman while following up on his paperwork prepared as a result of the May 29, 2016 encounter.

9. Appellant claimed that all of the other searches he conducted were completed while he was on "[r]outine traffic patrol." Appellant explained that he ran license plates "[e]very time [he] drove by somebody."

{¶ 37} Appellant additionally claimed that he did not receive any OHLEG or LEADS training before he gained access to the systems, and that until trial no one had shown him the OHLEG training video.

{¶ 38} On cross-examination, the prosecutor questioned appellant regarding his claim that he searched Lowman as a follow-up to his earlier encounter with her. The prosecutor noted that the reports introduced at trial indicated that appellant had cleared the scene on the night of the encounter. Appellant, however, stated that the "narrative" he prepared of the encounter was not documented in the evidence presented at trial.

{¶ 39} The prosecutor additionally asked appellant what criminal conduct appellant believed Blanton had engaged in by dismissing the speeding ticket, and appellant replied it "would have to be up to the Supreme Court [of Ohio] Disciplinary Counsel." Appellant further claimed that he investigated Blanton pursuant to Chief Bowling's and the mayor's request.

{¶ 40} Appellant also denied that he searched Carter's name as a means of vetting him as a landlord, even though appellant conducted the search near the time that he moved into Carter's property.

{¶ 41} The prosecutor questioned appellant regarding his motivation for searching Knipp and noted that Knipp testified that appellant searched her name because he was "calibrating the system." The prosecutor asked appellant whether Knipp was lying. Appellant responded, "Me and [Knipp] hardly talk really, okay, I told [Knipp] what the situation was out of respect for [her]." Appellant further claimed that he was allowed to run random searches.

{¶ 42} After the close of evidence, appellant asked the trial court to give the jury an instruction that conducting random license plate searches is not improper and instruct the jury that "[a]n officer does not need probable cause to run a license plate" and that an officer can "run random license plate searches." The trial court declined appellant's request.

{¶ 43} During closing arguments, the prosecutor argued that the only elements the parties dispute is whether appellant used OHLEG and LEADS beyond consent. The prosecutor asserted that appellant had consent to use the systems for the administration of criminal justice, but that appellant could not search an individual unless that person is suspected of a crime or involved in a criminal investigation. The prosecutor therefore claimed that appellant did not have consent to use OHLEG or LEADS to search his girlfriend, ex-girlfriend, landlord, or friends when none of those individuals had been suspected of a crime or otherwise involved in a criminal investigation.

{¶ 44} Defense counsel argued that the definition of "the administration of criminal justice" does not require an individual to be a suspect and that appellant performed all of the searches alleged to have violated R.C. 2913.04 as part of his duties to protect society.

{¶ 45} During deliberations, the jury asked the court to clarify the elements that must be met for each count. The court advised the jury that the elements consist of the following: appellant knowingly gained access to, attempted to gain access to, caused access to be granted, or disseminated information gained from access to OHLEG or LEADS without the consent of, or beyond the scope of the express or implied consent of, the appropriate authority.

{¶ 46} The jury subsequently found appellant guilty of forty OHLEG offenses as follows: (1) all but one of the offenses involving Edwards; and (2) all of the offenses involving Knipp, Carter, appellant's self-searches, Blanton, Lowman, and Rowe. The jury found appellant not guilty of the OHLEG offenses involving Himes. The jury found appellant guilty of five LEADS offenses as follows: (1) one offense involving Edwards; (2) two offenses involving Dryden; (3) one offense involving Upole; and (4) one offense involving appellant's self-search. On October 17, 2017, the trial court sentenced appellant to serve three years of community control and one hundred eighty days in jail. This appeal followed.

I

{¶ 47} In his first assignment of error, appellant asserts that trial counsel did not provide constitutionally effective assistance of counsel. In particular, appellant alleges that trial counsel failed to raise the R.C. 2913.03(C) affirmative defenses and failed to request the trial court to give the jury an affirmative defense instruction. Appellant claims that R.C. 2913.03(C) would have provided him with a complete defense if the jury found either that (1) appellant, "though mistaken, reasonably believed" that he possessed consent to conduct his OHLEG and LEADS searches, or (2) appellant reasonably believed that the administrators of OHLEG and LEADS would have authorized his searches. Thus, appellant contends, if trial counsel had requested an

affirmative defense instruction, a reasonable probability exists that the outcome of the trial would have been different. Appellant notes that defense counsel did assert that appellant believed his use of OHLEG and LEADS was for the administration of criminal justice or for a legitimate law enforcement purpose, and appellant did testify that he believed he was authorized to conduct random vehicle tag searches. Thus, appellant asserts that if trial counsel had requested the affirmative defense jury instruction, a reasonable likelihood exists that the jury would have acquitted appellant on all offenses, but especially the offenses that involved Edwards, Knipp, Carter, Blanton, and himself.

A

{¶ 48} The Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution provide that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Hinton v. Alabama*, 571 U.S. 263, 272, 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014) (explaining that the Sixth Amendment right to counsel means "that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence").

{¶ 49} To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *E.g., Strickland*, 466 U.S. at 687; *State v. Myers*, — Ohio St.3d —, 2018-Ohio-1903, — N.E.3d —, ¶ 183; *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85. "Failure to establish either

element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the ineffective-assistance-of-counsel elements "negates a court's need to consider the other").

1

{¶ 50} The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), quoting *Strickland*, 466 U.S. at 688; *accord Hinton*, 571 U.S. at 273. Prevailing professional norms dictate that "a lawyer must have 'full authority to manage the conduct of the trial.'" *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). Furthermore, "'[i]n any case presenting an ineffectiveness claim, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" *Hinton*, 571 U.S. at 273, quoting *Strickland*, 466 U.S. at 688. Accordingly, "[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95 (citations omitted).

{¶ 51} Moreover, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Thus, "the defendant must overcome the presumption that, under the circumstances,

the challenged action might be considered sound trial strategy."  *Id.*   Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner."  *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).   Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment."  *Strickland*, 466 U.S. at 687; *e.g., State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

2

{¶ 52} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that "'but for counsel's errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine the outcome.'"  *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus; *accord State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 91 (indicating that prejudice component requires a "but for" analysis).   "'[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"  *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 695.   Furthermore, courts ordinarily may not simply presume the existence of prejudice but, instead, must require the defendant to affirmatively establish prejudice.  *State v. Clark*, 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592 (Apr. 2, 2002); *see generally Roe v. Flores-Ortega*, 528 U.S. 470,

483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2008) (observing that prejudice may be presumed in limited contexts, none of which are relevant to appellant's first assignment of error). As we have repeatedly recognized, speculation is insufficient to establish the prejudice component of an ineffective assistance of counsel claim. *E.g., State v. Tabor*, 4th Dist. Jackson No. 16CA9, 2017-Ohio-8656, 2017 WL 5641282, ¶ 34; *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 22; *State v. Simmons*, 4th Dist. Highland No. 13CA4, 2013-Ohio-2890, ¶ 25; *State v. Halley*, 4th Dist. Gallia No. 10CA13, 2012-Ohio-1625, ¶ 25; *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 68; *accord State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 86 (stating that an argument that is purely speculative cannot serve as the basis for an ineffectiveness claim).

{¶ 53} In the case at bar, as we explain below, we do not believe that a reasonable probability exists that the outcome of appellant's trial would have been different but for trial counsel's alleged deficiency in failing to request an affirmative defense instruction.

B

{¶ 54} Appellant claims that trial counsel performed ineffectively by failing to request the court to give the jury an R.C. 2913.03(C) affirmative-defense instruction.

{¶ 55} Generally, a trial court has broad discretion to decide how to fashion jury instructions. The trial court must not, however, fail to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. Additionally, a trial court may not omit a requested instruction, if such instruction is "'a correct, pertinent statement of the law and [is] appropriate to the facts * * *.'"

*State v. Lessin*, 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993), quoting *State v. Nelson*, 36 Ohio

St.2d 79, 303 N.E.2d 865 (1973), paragraph one of the syllabus. Furthermore, a trial court need

not provide an affirmative-defense jury instruction unless the defendant introduces "sufficient

evidence, which, if believed, would raise a question in the minds of reasonable [factfinders]

concerning the existence of such issue." *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195

(1978), paragraph one of the syllabus; R.C. 2901.05(A). "Evidence is sufficient where a

reasonable doubt of guilt has arisen based upon [the affirmative defense]." *Id.* at 20. "If the

evidence generates only a mere speculation or possible doubt, such evidence is insufficient to

raise the affirmative defense, and submission of the issue to the jury will be unwarranted." *Id.*

Thus, "[a]s a matter of law the trial court cannot give a jury instruction on an affirmative defense

if a defendant fails to meet this burden." *State v. Schwendeman*, 4th Dist. No. 17CA7,

2018-Ohio-240, 104 N.E.3d 44, 2018 WL 509351, ¶ 19.

{¶ 56} R.C. 2913.03(C) sets forth two affirmative defenses to a charge under R.C.

2913.04(C) or (D)[2]:

> (1) At the time of the alleged offense, the actor, though mistaken, reasonably believed that the actor was authorized to use or operate the property.
> (2) At the time of the alleged offense, the actor reasonably believed that the owner or person empowered to give consent would authorize the actor to use or operate the property.

{¶ 57} Appellant claims that he presented sufficient evidence at trial to support a finding

that he reasonably believed that his use of OHLEG and LEADS was authorized. Appellant thus

alleges that trial counsel acted deficiently by failing to request an affirmative-defense instruction.

---

[2] R.C. 2913.04(E) states that "[t]he affirmative defenses contained in division (C) of section 2913.03 of the Revised Code are affirmative defenses to a charge under this section."

He further argues that if counsel had requested the instruction, the trial court would have been obligated to so instruct the jury. Appellant thus contends that if the court had given the jury the affirmative-defense instruction, a reasonable probability exists that the jury would have found him not guilty. We do not agree.

{¶ 58} R.C. 2913.04(C) and (D) define the offenses as charged in appellant's indictment as follows:

> (C)  Except as permitted under section 5503.101 of the Revised Code, no person shall knowingly gain access to, attempt to gain access to, cause access to be granted to, or disseminate information gained from access to the law enforcement automated database system created pursuant to section 5503.10 of the Revised Code without the consent of, or beyond the scope of the express or implied consent of, the chair of the law enforcement automated data system steering committee.
> (D) No person shall knowingly gain access to, attempt to gain access to, cause access to be granted to, or disseminate information gained from access to the Ohio law enforcement gateway established and operated pursuant to division (C)(1) of section 109.57 of the Revised Code without the consent of, or beyond the scope of the express or implied consent of, the superintendent of the bureau of criminal identification and investigation.

{¶ 59} At trial, the state presented evidence that appellant had consent to use OHLEG and LEADS for the administration of criminal justice only. The state introduced evidence to illustrate that the "administration of criminal justice" means "the detection, apprehension, detention, pretrial release, post-trial release, prosecution, adjudication, correctional supervision, or rehabilitation of accused persons or criminal offenders." Ohio Admin. Code 4501:2-10-01(A).

{¶ 60} Appellant claims that a reasonable probability exists that an affirmative-defense instruction would have led the jury to conclude that he reasonably believed that his use of OHLEG and LEADS was for the administration of criminal justice. We do not believe,

however, that the evidence presented at trial sufficiently established that appellant possessed a *reasonable* belief that his use of OHLEG and LEADS was within the scope of consent.   Instead, as we explain below, "the evidence generates only a mere speculation or possible doubt," which "is insufficient to raise the affirmative defense."   *Melchior*, 56 Ohio St.2d at 20.   Thus, even if trial counsel had requested the court to give the jury the affirmative-defense instruction, the instruction would not have been warranted.[3]   Although appellant argues that he was simply mistaken in his belief that his use was for the administration of criminal justice, the evidence does not suggest that appellant's mistaken belief was a reasonable belief.   Instead: (1) the evidence plainly documents the improper use of OHLEG and LEADS further shows that appellant signed forms to indicate that he understood the proper uses; (2) each time appellant logged in to OHLEG, he had to agree to three separate statements to indicate that he understood the proper use of OHLEG; (3) a similar warning accompanied each LEADS log-ins; and (4) none of the uses authorized appellant to search a girlfriend, an ex-girlfriend,  an ex-girlfriend's paramour, a barmaid, an assistant prosecutor and traffic court magistrate, a landlord, friends, acquaintances or one's self in the absence of a criminal justice purpose.   Indeed, the OHLEG rules and regulations admitted at trial, which bear appellant's signature of the cover page, specifically warn that self-searches are not authorized beyond the initial seven-day training period.

---

[3] We observe that "[q]uestionable trial strategies and tactics [ordinarily] do not rise to the level of ineffective assistance of counsel."   *State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, 88 N.E.3d 935, ¶ 18, citing *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).   Moreover, "[s]imply because there [may be] 'another and better strategy available' [does] not mean that counsel provided ineffective assistance."   *Id.* at ¶ 19, quoting *Clayton*, 62 Ohio St.2d at 48–49.

{¶ 61} While appellant claims that in his view each search he performed involved a criminal justice or law enforcement purpose, the evidence instead overwhelmingly reveals that appellant's belief is not simply unreasonable, but is, in fact, absurd. Appellant apparently asserts that because he served as a law enforcement officer, any search he undertook, regardless of the nature, scope, purpose or reason, and whether for personal amusement, curiosity, knowledge or benefit, was permitted. Clearly, the evidence adduced at trial does not support appellant's view that he searched Edwards, Blanton, Knipp, Carter, White, or himself for a purpose related to the "detection, apprehension, detention, pretrial release, post-trial release, prosecution, adjudication, correctional supervision, or rehabilitation of accused persons or criminal offenders." None of this evidence adduced at trial indicates that any of the individuals appellant searched were "accused persons or criminal offenders," or that appellant reasonably believed his searches were necessary to detect an accused person or criminal offender. Instead, appellant testified that he believed he could simply run random searches. However, the jury's guilty verdicts show that it considered, but discredited, appellant's testimony and argument that he conducted all searches for a law enforcement purpose and, instead, found his use of OHLEG and LEADS improper.

{¶ 62} In sum, the evidence shows that although appellant acknowledged the proper uses of OHLEG and LEADS each time he logged in, the individuals appellant searched did not involve an accused person or a criminal offender, or were connected in any manner whatsoever to the detection or apprehension of such a person. Thus, even if trial counsel had requested an affirmative-defense instruction, appellant did not present sufficient evidence to warrant the instruction. Also, it is not reasonably probable that the jury would have determined that

appellant's absurd belief that he conducted searches for the administration of criminal justice and, although mistaken, was reasonable. Once again, we believe that even if the evidence warranted an affirmative-defense instruction, we do not find it reasonably probable that the jury would have determined that appellant's belief that his searches were for the administration of criminal justice, though mistaken, was reasonable. For similar reasons, we do not find that a reasonable probability exists that the outcome of the trial would have been different if the court had given a R.C. 2913.03(C)(2) affirmative defense instruction.

{¶ 63} We therefore do not find a reasonable probability exists that the outcome of appellant's trial would have been different if the trial court had given the jury the R.C. 2913.03(C) affirmative defense instructions. *See State v. Dayton*, 3rd Dist. Union No. 14-17-03, 2018-Ohio-3003, 2018 WL 3621774, ¶ 114-124 (determining that trial counsel not ineffective for failing to request accomplice jury instruction when no reasonable probability that jury would have reached different verdict; also concluding that court's failure to provide accomplice jury instruction harmless error and would not amount to plain error); *State v. Sherrell*, 5th Dist. Stark No. 2015CA00086, 2016-Ohio-1177, 2016 WL 1110256, ¶ 33 (concluding that trial counsel not ineffective for failing to request defense-of-property jury instruction when evidence did not adequately show defendant reasonably believed imminent threat to property existed); *see generally Neder v. United States*, 527 U.S. 1, 17, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (concluding error in jury instructions harmless when "beyond cavil" that error did not contribute to verdict); *State v. Wilks*, — Ohio St.3d —, 2018-Ohio-1562, — N.E.3d —, ¶ 130 (determining that plain-error doctrine applies to alleged error in failing to correctly instruct jury); *State v. Crawford*, 8th Dist. No. 104055, 2016-Ohio-7779, 73 N.E.3d 1110, 2016 WL 6805055, ¶¶ 16-19

(concluding that plain error did not occur due to absence of "accident" instruction when court properly instructed jury on elements of offenses); *State v. Hess*, 4th Dist. No. 13CA15, 2014-Ohio-3193, 17 N.E.3d 15, 2014 WL 3565978, ¶ 29 (observing that court's failure to give jury not-guilty-by-reason-of-insanity instruction not plain error when evidence did not warrant instruction); *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, 2013 WL 3341171, ¶ 61 (determining that defendant could not establish prejudice resulted from lack of "accident" jury instruction when court's general charge defined mental states, "knowingly" and "purposefully," in manner that would have allowed jury to acquit if jury credited defendant's claim of accident); *State v. Griffin*, 6th Dist. Lucas No. L-11-1283, 2013-Ohio-411, 2013 WL 494023, ¶¶ 37-39 (determining that trial counsel was not ineffective for failing to request a mistake-of-fact instruction when under court's general charge jury should have acquitted defendant if he acted without purpose or had a reasonable justification or excuse for committing offense); *State v. Chambers*, 4th Dist. Adams No. 10CA902, 2011-Ohio-4352, 2011 WL 3841961, ¶ 48 (stating that "court's knowingly instruction adequately conveyed to the jury the requisite mental state, and had the jury believed appellant's claimed accident theory at trial, it could not have found that he acted knowingly" and finding "no danger that the jury wrongly convicted appellant due to the absence of an accident instruction"); *State v. Mathias*, 10th Dist. Franklin No. 06AP-1228, 2007-Ohio-6543, 2007 WL 4285107, ¶¶ 20-22 (concluding that prejudicial error did not occur due to absence of "mistake of fact" instruction in theft prosecution when court's general charge defined mental states of "knowingly" and "purposefully"); *see also State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, 29 N.E.3d 939, 2015 WL 687461, ¶¶ 56-62 (determining that plain error did not result from lack of "mistake-of-fact" instruction in

officer-involved shooting trial); *State v. Sneed*, 63 Ohio St.3d 3, 10, 584 N.E.2d 1160 (1992) (stating that prejudicial error does not occur "when the substance of the requested instruction was already included in the court's general charge).

**{¶ 64}** Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

**{¶ 65}** In his second assignment of error, appellant asserts that his R.C. 2913.04(C) and (D) convictions violate his due process rights. In particular, appellant claims that the statutory provisions are unconstitutionally vague because they do not fairly inform an individual of the proscribed conduct. Appellant recognizes, however, that trial counsel did not object to the statute on vagueness grounds and that he must argue plain error on appeal.

**{¶ 66}** Trial counsel's failure to raise the constitutionality of R.C. 2913.04 during the trial court proceedings results in the forfeiture of the argument for purposes of appeal. *E.g., State v. Anderson*, 151 Ohio St.3d 212, 2017-Ohio-5656, 87 N.E.3d 1203, ¶ 44 (noting that failure to raise issue during lower court proceedings forfeits "right to present it for the first time" on appeal to supreme court); *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 190 (noting that raising issue "for the first time in the court of appeals" forfeits "all but plain error"). Consequently, we may review this issue only for plain error.

**{¶ 67}** Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B) thus permits a court to recognize plain error if the party claiming error establishes (1) that "'an error, i.e., a deviation from a legal rule'" occurred, (2) that the error is a plain or "'an "obvious"

defect in the trial proceedings,'" and (3) that this obvious error affected substantial rights, i.e., the error "'"must have affected the outcome of the trial.'" *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); *accord State v. Thomas*, 152 Ohio St.3d 15, 2017-Ohio-8011, 92 N.E.3d 821, ¶ 32–33. For an error to be "plain" or "obvious," the error must be plain "under current law" "at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 467, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *accord Henderson v. United States*, 568 U.S. 266, 279, 133 S.Ct. 1121, 185 L.Ed.2d 85 (2013); *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240, citing *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (noting that for error to be plain, it must be obvious error under current law); *State v. G.C.*, 10th Dist. Franklin No. 15AP-536, 2016-Ohio-717, 2016 WL 764409, ¶ 14. Even when, however, a defendant demonstrates that a plain error or defect affected his substantial rights, the Ohio Supreme Court has "'admonish[ed] courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."'" *Rogers* at ¶ 23, quoting *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 68} After our review in the case sub judice, we do not believe that the trial court committed plain error. Courts have rejected vagueness challenges to R.C. 2913.04(C) and (D). *State v. Garn*, 5th Dist. No. 16CA26, 2017-Ohio-2969, 91 N.E.3d 109, 2017 WL 2265533, appeal not allowed, 152 Ohio St.3d 1406, 2018-Ohio-723, 92 N.E.3d 878; *State v. Johnson*, 8th Dist. Cuyahoga No. 59190, 1992 WL 25312. In *Garn*, the court explained its reasoning for concluding that R.C. 2913.04(C) is not void for vagueness:

> Appellant, a law enforcement officer, could and should have understood his duties and responsibilities with regard to utilizing the LEADS system for legitimate law enforcement purposes. Appellant knew or should have known the acts which would be against the expressed or implied consent of the law enforcement automated data system steering committee and/or the superintendent of the bureau of criminal identification and investigation. The evidence demonstrates Appellant was LEADS certified, and successfully completed retesting, scoring high averages. The Ohio Administrative Code sections cited by the trial court herein provide adequate notice of what Appellant is required to do or prohibited to do under the statute.

*Id.* at ¶ 17. Consequently, based upon the foregoing authority, we do not believe that the trial court plainly erred by failing to conclude that appellant's convictions violated his due process rights.

{¶ 69} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

III

{¶ 70} In his third assignment of error, appellant asserts that the trial court's decision to deny appellant's motion to continue required defense counsel to "either provide a complete defense for his client and risk disciplinary action or decline to raise that defense for the client in order to protect himself." Appellant claims that defense counsel's conflict between counsel's own interest in avoiding a possible ethics violation and appellant's defense left him unable to provide constitutionally effective assistance of counsel and that counsel's conflict of interest justifies a presumption of ineffectiveness.

{¶ 71} Within this assignment of error, appellant also claims that the trial court denial of trial counsel's request for a continuance constitutes an abuse of discretion.

A

{¶ 72} In most cases, a defendant's failure to satisfy either part of the test set forth in *Strickland* (deficient performance plus prejudice) is fatal to an ineffective assistance claim. *Madrigal*, 87 Ohio St.3d at 389; *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. The United States Supreme Court, however, crafted a narrow exception to the general rule that a defendant must prove that counsel's deficient performance prejudiced the outcome of the proceedings. *Florida v. Nixon*, 543 U.S. 175, 190, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004); *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In *Cronic*, the Court "recognized that some circumstances are so likely to prejudice the defendant that no showing of prejudice is necessary." *State v. Sanders*, 92 Ohio St.3d 245, 277, 750 N.E.2d 90 (2001).

> These include "the complete denial of counsel * * * at a critical stage of [the] trial" and the complete failure of counsel "to subject the prosecution's case to meaningful adversarial testing." [*Cronic*,] 466 U.S. at 659, 104 S.Ct. at 2047, 80 L.Ed.2d at 668. "Ineffectiveness is also presumed when counsel 'actively represented conflicting interests.'" *Id.* at 661, 104 S.Ct. at 2048, 80 L.Ed.2d at 669, fn. 28, quoting *Cuyler v. Sullivan* (1980), 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333, 347. Also included are such extreme cases as *Powell v. Alabama* (1932), 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, where defense counsel was appointed only a few minutes before the trial commenced. *See Cronic*, 466 U.S. at 659–661, 104 S.Ct. at 2047–2048, 80 L.Ed.2d at 668–669 (discussing *Powell*).
>   "Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Cronic*, 466 U.S. at 659, 104 S.Ct. at 2047, 80 L.Ed.2d at 668, fn. 26.

*Sanders*, 92 Ohio St.3d at 277.

{¶ 73} In the case at bar, we do not believe that the circumstances are of such a magnitude that we must presume prejudice. Trial counsel presented all of the facts and circumstances surrounding appellant's belief that Blanton's dismissal of the speeding ticket

constituted misconduct. The only fact that counsel did not present concerned a confidential matter that appellant allegedly initiated a Disciplinary Counsel complaint that alleged misconduct. Thus, even if counsel labored under a conflict between a possible ethical violation and the presentation of evidence to support appellant's case, that conflict had no bearing on counsel's performance or the trial. Instead, counsel subjected the state's case to meaningful adversarial testing. Counsel also presented evidence that appellant believed that Blanton improperly dismissed the ticket and that appellant believed Blanton's impropriety warranted an OHLEG search. Despite counsel's inability to refer to any potential disciplinary proceedings that appellant sought to institute, counsel still presented evidence that appellant believed that his conduct was justified. We therefore do not believe that the case at bar is one of those narrow circumstances that demand a presumption of prejudice.

B

{¶ 74} To the extent appellant also argues that the trial court also erred by denying his motion to continue, we point out that the Appellate Rules require each assignment of error to be presented separately. Also, App.R. 12(A)(2) allows a court to "disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App. R. 16(A)." Moreover, App.R. 16(A)(3) requires an appellant's brief to include "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." We further note that appellate courts determine an appeal "on its merits on the assignment of error[s]" and not on "mere arguments." App.R. 12(A)(1)(b); *State v. Johnson*, 4th Dist. Scioto No. 17CA3814, 2018-Ohio-4516, 2018 WL 5892659, ¶ 8; *State v. Ross*, 4th Dist. No. 16CA3771, 2017-Ohio-9400, 103 N.E.3d 81, ¶ 53.

{¶ 75} In the case at bar, appellant did not raise the issue of the trial court's decision to deny his motion to continue as a separate assignment of error. We therefore will disregard the argument. Moreover, we further point out that the record contains nothing to suggest that the court abused its discretion by denying appellant's motion to continue.

{¶ 76} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

[Cite as *State v. Hayes*, **2019-Ohio-257.**]

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.   The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.   If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.   Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele, Presiding Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.