[Cite as *State v. Roth*, 2023-Ohio-4616.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | Case No. CT2023-0007 |
| | : | |
| JOSEPH J. ROTH | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Muskingum County
Court of Common Pleas, Criminal
Division, Case No. CR2022-0597

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: December 18, 2023

APPEARANCES:

For Plaintiff-Appellee:                           For Defendant-Appellant:

RONALD L. WELCH                              RICHARD D. HIXSON
MUSKINGUM COUNTY PROSECUTOR       3808 James Court, Suite 2
                                                      Zanesville, OH 43701
JOHN CONNOR DEVER
27 N. 5th St., P.O. Box 189
Zanesville, OH 43702

*Delaney, P.J.*

{¶1} Defendant-Appellant Joseph J. Roth appeals his February 1, 2023 conviction and sentence by the Muskingum County Court of Common Pleas, Criminal Division.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The Muskingum County Grand Jury indicted Defendant-Appellant Joseph J. Roth on one count of unauthorized use of a motor vehicle, a fifth-degree felony in violation of R.C. 2913.03(B) and (D)(3), and one count of obstructing official business, a second-degree misdemeanor in violation of R.C. 2921.31(A) and (B). Roth entered a plea of not guilty to both charges.

{¶3} The matter proceeded to a jury trial on January 26, 2023. Prior to the start of trial, Roth entered a guilty plea to the charge of obstructing official business. The following facts were adduced at trial.

{¶4} Roth and L.M. had been friends for 16 years. L.M. resided in Muskingum County. Roth was divorced from his wife and living with a friend, T.W., in Muskingum County. At the time of the jury trial, Roth and L.M. were in a romantic relationship.

{¶5} In 2022, L.M. was the owner of two cars, a white Chevy Traverse and a BMW. On September 29, 2022, L.M. allowed Roth to take her Chevy Traverse because he said he was going to fix the power steering on the Chevy Traverse and make repairs to her BMW. L.M. testified that she did not give Roth permission to keep the Chevy Traverse. He was to make the repairs and return the car.

{¶6} As demonstrated through text messages exchanged between L.M. and Roth from September 29, 2022 to October 4, 2023 (State's Exhibits A and B), L.M.

repeatedly told Roth to return her Chevy Traverse. Instead of returning the car upon her request, Roth provided multiple responses such as that he did not get her message because he was sleeping, his phone was not charged, he was at work, he lost the keys, or that he was working on procuring parts to make the repair to the power steering. L.M. told Roth if the issue was fixing the car, he needed to complete the repair and return the car to her. L.M. continued to demand that Roth return the car, to which Roth responded that L.M. should come pick up the car herself.

{¶7} On October 5, 2022, L.M. went to the Muskingum County Sheriff's Office to report that Roth had taken her white Chevy Traverse and would not return it. She went to the Sheriff because she did not know if she was the victim of theft or how to get her car back from Roth. L.M. testified that she did not intend for Roth to be arrested and charged with a crime due to the car. During her testimony, L.M. left the courtroom and had to be escorted back to complete her examination.

{¶8} Deputy Brice Sweeney and Patrol Deputy Jason Harmon of the Muskingum County Sheriff's Office were dispatched to T.W.'s house in an attempt to locate a stolen vehicle. T.W. gave the officers permission to search the residence. An officer posted outside the residence saw Roth run from the residence and jump a backyard fence. Deputy Sweeney ordered Roth to the ground, handcuffed him, and placed Roth under arrest. Roth was arrested for an outstanding warrant through the Adult Parole Authority. Roth was provided with his *Miranda* rights but chose to give a statement. He admitted to using the Chevy Traverse. He provided his cell phone with the text messages, which were collected as evidence.

{¶9} Roth testified in his own defense. According to Roth, he and L.M. agreed that if he could help her fix her car, he could drive the car while he was fixing it. He said he kept the Chevy Traverse because he was attempting to replace the power steering pump. He said the car was not drivable because the power steering was not operating. When asked why he did not return the car when L.M. asked him, Roth responded he did not return it because the power steering was not working and that L.M. was in love with him. He was afraid L.M. would not let him go. Roth denied that L.M. said in their text messages that she no longer wanted Roth to use her car. After the officers recovered the Chevy Traverse, L.M. picked up the car and drove it. Roth was asked how the car was drivable when he stated he could not return the car because it was not drivable. He responded that he had installed the old power steering pump prior to his arrest.

{¶10} At the close of the State's case, Roth moved for a Crim.R. 29 dismissal. The trial court denied the motion. At the close of his case, Roth renewed his motion for a Crim.R. 29 dismissal. The trial court denied the motion.

{¶11} The jury returned a verdict of guilty on the charge of unauthorized use of a motor vehicle.

{¶12} The trial court moved to sentencing. Via sentencing entry filed on February 1, 2023, the trial court sentenced Roth to 12 months in prison on Count One and 90 days in jail on Count Two, to be served concurrently. The trial court terminated Roth's post release control from Case No. CR2013-0012 and imposed that remainder of time to served consecutively to his prison sentence.

{¶13} It is from this judgment entry that Roth now appeals.

## ASSIGNMENTS OF ERROR

{¶14} Roth raises four Assignments of Error:

I. THE TRIAL COURT SUBSTANTIALLY AND PREJUDICIALLY ERRED WHEN IT FAILED TO INSTRUCT THE JURY REGARDING THE AFFIRMATIVE DEFENSES ENUMERATED IN R.C. SECTION 2913.03(C)(1) AND (2), AS WELL AS THE CULPABLE MENTAL STATE REQUIRED THROUGHOUT R.C. 2913.03(B), IN VIOLATION OF DEFENDANT/APPELLANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL.

II. THE JURY'S VERDICT AND SUBSEQUENT CONVICTION OF DEFENDANT/APPELLANT WAS BASED ON INSUFFICIENT EVIDENCE.

III. THE JURY'S VERDICT AND SUBSEQUENT CONVICTION OF DEFENDANT/APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

IV. DEFENDANT/APPELLANT WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW DUE TO PROSECUTORIAL MISCONDUCT.

## ANALYSIS

### I.

{¶15} In his first Assignment of Error, Roth argues the trial court erred when it failed to provide jury instructions regarding affirmative defenses and the culpable mental state under R.C. 2913.03. We disagree.

{¶16} A review of the record in this case shows that Roth did not object to the jury instructions, and he failed to request affirmative defense instructions. Roth contends in his appeal that the trial court did not give him any opportunity to object to the jury

instructions outside the presence of the jury. This is not an accurate statement of the record. At the conclusion of Roth's presentation of evidence, the trial court took a recess, and the jury left the courtroom. (T. 270). The State requested the admission of its exhibits. (T. 271). Roth's trial counsel renewed his motion for a Crim.R. 29 dismissal, which the trial court denied. (T. 271). The trial court then stated:

> THE COURT: I will make sure you get the jury instructions.
>
> MR. HASER: She's changing them now.
>
> THE COURT: When you get done, let me know of any problems or corrections that need made. If not, we'll proceed to closings.

(T. 272). Roth's trial counsel did not voice any problems or corrections to the jury instructions on the record and the trial court proceeded to closing arguments. (T. 272).

{¶17} Roth's trial counsel did not request an affirmative defense instruction or put any objections to the jury instructions on the record. For the purpose of our review, because trial counsel failed to object and bring the alleged error to the attention of the trial court, Roth has therefore waived all but plain error review. Under the plain error rule, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). The rule places the following limitations on a reviewing court's determination to correct an error despite the absence of timely objections at trial: (1) "there must be an error, i.e. a deviation from a legal rule," (2) "the error must be plain," that is an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Hoppe*, 5th Dist. Licking No. 22CA0032, 2023-Ohio-2188, ¶ 67 citing *State v. Wood*, 5th Dist. Knox No.

20CA000010, 2020-Ohio-4251, ¶ 18 citing *State v. Dunn*, 5th Dist. Stark No. 2008-CA-00137, 2009-Ohio-1688, ¶ 89, citing *State v. Morales*, 10th Dist. Franklin Nos. 03-AP-318, 2004-Ohio-3391, ¶ 19.

{¶18} Roth was charged with a violation of R.C. 2913.03(B), which states:

No person shall knowingly use or operate an aircraft, motor vehicle, motorboat, or other motor-propelled vehicle without the consent of the owner or person authorized to give consent, and either remove it from this state or keep possession of it for more than forty-eight hours.

{¶19} R.C. 2913.03(C) sets forth two affirmative defenses:

(C) The following are affirmative defenses to a charge under this section:

(1) At the time of the alleged offense, the actor, though mistaken, reasonably believed that the actor was authorized to use or operate the property.

(2) At the time of the alleged offense, the actor reasonably believed that the owner or person empowered to give consent would authorize the actor to use or operate the property.

{¶20} Generally, a trial court has broad discretion to decide how to fashion jury instructions. However, "[a] criminal defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." *State v. Staats*, 5th Dist. Stark No. 2019CA00181, 2021-Ohio-1325, ¶ 24 quoting *State v. Williford,* 49 Ohio St.3d 247, 251, 551 N.E.2d 1279 (1990). *See also State v. Sneed*, 63 Ohio St.3d 3, 9, 584 N.E.2d 1160 (1992). Additionally, a trial court may not omit a requested instruction, if such instruction is " 'a correct, pertinent statement of the law and [is] appropriate to the

facts * * *.' " *State v. Hayes*, 4th Dist. Adams No. 17CA1056, 2019-Ohio-257, ¶ 55 quoting *State v. Lessin*, 67 Ohio St.3d 487, 493, 620 N.E.2d 72 (1993), quoting *State v. Nelson*, 36 Ohio St.2d 79, 303 N.E.2d 865 (1973), paragraph one of the syllabus. The trial court is not required to provide an affirmative-defense jury instruction unless the defendant introduces "sufficient evidence, which, if believed, would raise a question in the minds of reasonable [factfinders] concerning the existence of such issue." *Hayes* at ¶ 55 quoting *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978), paragraph one of the syllabus; R.C. 2901.05(A).

{¶21} Our review shows there was no obvious defect in the record affecting Roth's substantial rights. We first address Roth's argument as to affirmative defenses. Even if the trial court should have given an instruction if one was requested, we find the failure to do so in the absence of a request does not rise to the level of plain error. Roth testified he believed that L.M. authorized him to use the vehicle until he got it fixed. The real-time text messages between Roth and L.M. presented at trial contradict Roth's argument that his belief was reasonable. L.M. repeatedly texted Roth to return her vehicle. For example, after Roth had L.M.'s vehicle for multiple days, L.M. texted Roth, "Bring me my car now!!" Roth responded, "Come get your mother f****** car. We're not going to agree on something and then you switch it up because I'm not answering because I'm asleep I got time for your sh***." L.M. responded, "You took my car bring it back!" (State's Ex. B28, B29). We do not find the outcome of the trial was affected by the lack of affirmative defense instruction under R.C. 2913.03(C).

{¶22} Second, we find no obvious defect as to the trial court's instruction regarding the *mens rea* element under R.C. 2913.03(B). Roth appears to argue in his

appellate brief that there is a specific *mens rea* jury instruction for the "lack of consent" requirement in R.C. 2913.03(B) and it was plain error for the trial court to omit the instruction. (Appellant's Brief, p. 9). It is unclear whether Roth is arguing the alleged *mens rea* requirement applies only to the affirmative defenses. He does not provide this Court with the jury instruction he argues the trial court should have used.

{¶23} The elements of the offense of unauthorized use of a motor vehicle are the (1) knowing use (2) of a motor vehicle (3) without consent. *See State v. Piskac*, 11th Dist. Portage No. 2021-P-0051, 2022-Ohio-1209, ¶ 27. In R.C. 2913.03(B), consent is deemed a defense so that lack of consent was made a specific element of the crime. *State v. Townsend*, 9th Dist. Summit No. 24311, 2009-Ohio-3190, ¶ 21. In this case, the trial court instructed the jury as to "knowingly." The trial court correctly instructed the jury as to the requisite state of mind for a violation of R.C. 2913.03(B).

{¶24} Roth's first Assignment of Error is overruled.

### II. and III.

{¶25} Roth contends in his second and third Assignments of Error that Roth's conviction was against the sufficiency and manifest weight of the evidence.

{¶26} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine

whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶27} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins, supra*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶28} Roth was charged with a violation of R.C. 2913.03(B), which states:

No person shall knowingly use or operate an aircraft, motor vehicle, motorboat, or other motor-propelled vehicle without the consent of the owner or person authorized to give consent, and either remove it from this state or keep possession of it for more than forty-eight hours.

Roth argues his conviction for unauthorized use of a motor vehicle is against the sufficiency of the evidence because the State failed to present evidence that Roth *used or operated* L.M.'s vehicle during the period he possessed the vehicle after L.M. allegedly withdrew her consent.

{¶29} Roth does not provide this Court with a definition of the words "use" or "operate." The Ohio Revised Code provides a definition of "operate" in relation to motor vehicles: "'Operate' means to cause or have caused movement of a vehicle, streetcar, or trackless trolley." R.C. 4511.01(HHH). Where a word is not specifically defined by statute, we must use the word's common meaning. *State v. Corcoran*, 8th Dist. No. 111717, 2023-Ohio-1218, 214 N.E.3d 10, ¶ 23 citing *Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 25. The verb "use" is defined as "to make use of; to convert to one's service, to employ; to avail oneself of; to utilize; to put into action or service, especially to attain an end." *Black's Law Dictionary* 1072 (6th Edition 1991).

{¶30} Roth points this Court to his testimony where he stated that L.M. assumed he was driving her vehicle, but she had no evidence he was driving her car. (T. 263). He said that L.M. did not realize her car had broken down in front of his house for three days because of the broken power steering pump. (T. 263). Roth, however, goes on to contradict himself as to the use of the vehicle. Roth testified, "I cannot work on her car at [T.W.'s] house. I lived at [T.W.'s] house. I never said I worked on it there. * * * My friend, Rob's garage, where I had tools, where I had a garage to work on it." (T. 266). He further testified, "No. I didn't use it at my own will. I had permission to fix her car. I had permission to drive the car while – while I was fixing it. I didn't even drive her car over half the time because the power steering pump wasn't in it." (T. 262). According to Roth's own testimony, he availed himself to the vehicle.

{¶31} After viewing Roth's testimony in a light most favorable to the State, any rational trier of fact could have found the State proved beyond a reasonable doubt that Roth used or operated the vehicle.

{¶32} As to manifest weight, Roth first reiterates his argument that the trial court improperly omitted the affirmative defense jury instructions. We find that argument to be moot based on our determination in the first Assignment of Error. Roth next contends there was no evidence that he used or operated the vehicle, the evidence was vague as to whether L.M. withdrew her consent for Roth to use the vehicle, and there was no evidence that Roth kept possession of the vehicle for more than 48 hours.

{¶33} The jury considered the real-time text messages exchanged between L.M. and Roth in conjunction with their trial testimony. The jury was aware that Roth and L.M. were in a romantic relationship at the time of the trial and that L.M. did not intend for Roth to be arrested and charged for the unauthorized use of the vehicle. The jury chose to rely on the text messages and L.M.'s testimony and reject Roth's testimony. We cannot say the jury clearly lost its way in rejecting Roth's version of events. The jury was in the best position to observe the witnesses and determine their credibility. We find the conviction was not against the manifest weight of the evidence.

{¶34} Roth's second and third Assignments of Error are overruled.

**IV.**

{¶35} In his final Assignment of Error, Roth contends the prosecutor made comments during Roth's cross-examination that rose to the level of prosecutorial misconduct. We disagree.

{¶36} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. *State v. Hoppe*, 5th Dist. Licking No. 22CA0032, 2023-Ohio-2188, 2023 WL 4267606, ¶ 68 citing *Sunbury v. Sullivan*, 5th Dist.

Delaware No. 11CAC030025, 2012-Ohio-3699, 2012 WL 3525617, ¶ 30 citing State v. Lott, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990). In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). A trial is not unfair, if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. *State v. Treesh*, 90 Ohio St.3d 460, 464, 739 N.E.2d 749 (2001).

{¶37} Roth cites the prosecutor's comments which he contends were prosecutorial misconduct:

* * *

A. You don't have to. You can pay full price for the power steering, if you're buying, or you can take that old one back and they give you $20 back.

Q. I mean, you can say all the live long day. You don't take cores to a junk yard to get a discount.

A. I do.

Q. That's – that's – but okay. That's certainly a canard. How many times in a row do you have to be told something to understand it?

A. Referring to what? I mean –

Q. Anything just in general.

A. – that's a loaded question.

Q. No. Like, how many times?

* * *

Q. Okay. Do you think that if you take someone's car and you won't give it back to them, but you stop by and visit their kids, that that makes it okay to steal their car?

A. I didn't steal the car.

* * *

A. She even told you on December 4th – or on October 4th, she said fix my car. She wanted her car fixed. That's all she wanted, was her car fixed. She did not say on October 4th bring me my car back. She said fix my car. And at the moment she said you do not have permission to drive my car, which was on October 5th, I never touched her car again. I was arrested 20 minutes later.

A. Okay. Well, I think that's really interesting. I like the reference to the fixing the car. Because there's also a thing called a fixation, which someone can get towards something.

(T. 251-252, 260, 261).

{¶38} Trial counsel did not object to the prosecutor's comments that Roth now argues on appeal were prosecutorial misconduct. Accordingly, we review the issue for plain error due to lack of objections made at trial. Crim.R. 52(B).

{¶39} The "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Sankey*, 5th Dist. Stark No. 2005-CA-00272, 2006-Ohio-5316, ¶ 31 quoting *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996). In the prosecutor's first comment, he used the word "canard," which means a false or unfounded report or story. *Webster's Ninth New Collegiate Dictionary* 200

(1989). A review of the exchange between Roth and the prosecutor shows the prosecutor used the word "canard" to comment on Roth's transactions with the junk yard, not on the charge of unauthorized use of a motor vehicle. It does not go to the justness of the cause, the credibility of the witness, or the guilt or innocence of the accused. *State v. Sankey*, 5th Dist. Stark No. 2005-CA-00272, 2006-Ohio-5316, ¶ 32.

{¶40} In the prosecutor's second comment, he describes Roth's behavior as "stealing the car." Roth was charged with unauthorized use of a motor vehicle, not theft. Roth has not brought it to the Court's attention nor has a review of the trial transcript shown that the prosecutor described Roth's actions as theft more times than that one aside. In his third comment, the Court can only guess as to what the prosecutor was referring to, Roth's fixation on the car or his fixation on L.M? Upon consideration of the comments in the context of the entire trial, we find no plain error in the admission of the cited comments. It is evident beyond a reasonable doubt that the jury would have found Roth guilty without the State's comments.

{¶41} Roth's fourth Assignment of Error is overruled.

**CONCLUSION**

{¶42} The judgment of the Muskingum County Court of Common Pleas, Criminal Division, is affirmed.

By: Delaney, P.J.,

Baldwin, J. and

King, J., concur.